588 A.2d 902

COMMONWEALTH of Pennsylvania, Appellee,

v.

Thomas Jeffrey GORBY, Appellant.

Supreme Court of Pennsylvania.

Argued March 8, 1990.

Decided April 3, 1991.

Reargument Denied May 21, 1991.

100

102

John P. Liekar, Sr., Public Defender, Francis C. Sichko, Washington, for appellant.

John C. Pettit, Dist. Atty., William A. Johnson, Asst. Dist. Atty., Washington, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION OF THE COURT

CAPPY, Justice.

This is an automatic direct appeal[1] from a death sentence imposed upon appellant by the Court of Common Pleas of Washington County following his conviction of first degree murder. Consolidated with this direct appeal are two appeals transferred from the Superior Court which raise issues related to one of the issues raised in this direct appeal.[2] For the reasons that follow, we affirm the judgments of sentence and affirm the orders entered at No. 1027 of 1981.

Following a trial by jury, appellant was convicted of murder in the first degree[3] and robbery[4]. A separate penalty hearing was held, after which the jury found two aggravating circumstances and no mitigating circumstances, thus, fixing the penalty on appellant's first degree murder conviction at death[5]. Thereafter, the trial court heard and denied appellant's post-trial motions and imposed the sentence as decided by the jury. In addition, the trial court sentenced appellant to a consecutive term of eight to sixteen years of imprisonment on the robbery conviction. This direct appeal followed.

1. See, 42 Pa.C.S.A. §§ 722(4), 9711(h)(1); Pa.R.A.P. Rule 702(b).
2. The two appeals which have been transferred and consolidated with this direct appeal stem from appellant's plea of guilty, in 1982, to charges of robbery, aggravated assault and criminal conspiracy arising out of a separate and unrelated criminal espisode.
3. 18 Pa.C.S. § 2501(a)
4. 18 Pa.C.S. § 3701.
5. 42 Pa.C.S. § 9711(c)(1)(iv).

■ In each case in which the death penalty is imposed, this Court is required to conduct an independent review of the sufficiency of the evidence, even where the defendant has not challenged the conviction on that ground.[6] *Commonwealth v. Zettlemoyer*, 500 Pa. 16, 454 A.2d 937 (1982), *cert. denied*, 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 *reh'g denied*, 463 U.S. 1236, 104 S.Ct. 31, 77 L.Ed.2d 1452 (1983). In reviewing the sufficiency of the evidence, we must determine whether the evidence, and all reasonable inferences deducible therefrom, viewed in the light most favorable to the Commonwealth as verdict-winner, are sufficient to establish all the elements of the offense(s) beyond a reasonable doubt. *Commonwealth v. Rhodes*, 510 Pa. 537, 510 A.2d 1217 (1986). So viewed, the evidence establishes the following:

On Friday, December 20, 1985, James Yeager, a friend of the victim, Drayton Sphar, telephoned Sphar and asked Sphar to pick him up at the Old Trails Inn.[7] Sphar arrived at the Old Trails Inn at approximately 10:00 p.m. that evening. Also present that evening at the Old Trails Inn was the appellant, Thomas Gorby.

When he arrived, Sphar was wearing a leather jacket and a chain belt with a buckle which bore his name on the back. He was also carrying a wallet which was embossed with a Harley Davidson emblem. While there, he bought several drinks for Yeager and appellant. He also bought at least one round of drinks for the entire bar that evening. Each time he bought drinks, the victim displayed a large roll of bills which was particularly visible to Yeager and Gorby who were seated next to him.

After a couple hours passed, appellant asked the victim to give him a ride to the Somerset Inn so that appellant could retrieve his car which was supposedly parked in the Somerset Inn's parking lot. The Somerset Inn is located approximately six miles from the Old Trails Inn. Gorby and the

6. Appellant in the instant case raises the issue of the sufficiency of the evidence.

7. Yeager and Sphar were, at that time, sharing an apartment.

victim left the Old Trails Inn somewhere between midnight and 12:30 a.m. on December 21, 1985, in Sphar's 1976 dark green, Mercury Marquis. Upon leaving, the victim assured Yeager that he would return to drive Yeager home.

At approximately 1:00 a.m. that morning, appellant arrived at the Somerset Inn bar alone. Shortly after arriving, appellant bought a round of drinks for everyone in the bar. He then went into the rest room and after returning, bought another round of drinks for everyone and wanted to again buy everyone a drink about ten minutes later. Each time he bought drinks, he displayed a roll of bills.

While at the Somerset Inn, appellant pulled a belt out of his pants similar to the one the victim was wearing earlier that evening. He placed the belt on the bar and it was passed among several of the patrons. Next, appellant gave the bartender, Harold Cain, a wallet which matched the description of the victim's wallet. Very soon thereafter, he displayed a knife stating that he wanted to show Cain how sharp it was and began shaving Cain's arm. Cain testified that while appellant was shaving the hair on his arm, he noticed blood stains on the knife.

Appellant remained at the Somerset Inn until closing, whereupon he asked Cain if Cain could drive him to the Old Trails Inn. Cain dropped appellant at the Old Trails Inn between 2:30 and 3:00 a.m. on December 21, 1985. Before leaving the Somerset Inn, Cain noticed Drayton Sphar's vehicle parked in the lot.

When appellant returned to the Old Trails Inn, he again purchased drinks for all the patrons. At that time, appellant was wearing the belt, which was later identified as belonging to the victim, wrapped around his hand. While there, appellant played pool with Nanette Leeper. Leeper noticed dried blood stains on appellant's pants and when she questioned him as to those stains, he told her that he had been gutting deer earlier that day. Appellant and Leeper left the Old Trails Inn around 4:00 a.m. Leeper last saw appellant when she dropped him off at the Eighty–Four Truck Stop shortly after 4:00 a.m. on December 21, 1985.

Appellant's girlfriend, Susan Loveland, testified that appellant called her on Friday, December 20, 1985 and asked her if she had any money. That same day, at approximately 3:00 p.m., she drove appellant to the Old Trails Inn and gave him $20.00. She did not see appellant again until 4:30 p.m., Saturday, December 21, 1985 when she met him and his mother at the corner of LeMoyne and Lockhart Streets, in Washington, Pennsylvania. Appellant's mother drove Loveland and appellant to the Howard Johnson Motor Lodge where a room was registered in Susan Loveland's name. It was in this room that appellant confessed to Loveland to killing Drayton Sphar. Appellant told Loveland that he had stabbed Sphar and then slit his throat with a knife. He told her that the killing occurred in the Somerset Inn parking lot in Sphar's car. He also told Loveland that he had taken money from Sphar. In addition, Loveland testified that appellant had Sphar's leather jacket and his belt in the room. Later in the evening, appellant placed the victim's wallet, belt and leather jacket as well as a wash cloth and one glove in a pillow case and disposed of the pillow case in a trash can located on the premises of the Howard Johnson Motor Lodge.

On Monday, December 23, 1985, John Logar, an employee of the Howard Johnson Motor Lodge, found, while emptying the trash, a pillow case containing a leather jacket, a wallet, a lighter, a belt, a pair of gloves and a wash cloth. Logar testified that after finding the belt, he tried it on and noticed that the name Drayton Sphar was embossed on the back of the buckle. Because Logar had just read in the newspaper about the murder of Drayton Sphar prior to finding the pillow case, he called the County Coroner.

Pursuant to their investigation, members of the Pennsylvania State Police questioned appellant at the home of his mother, Mrs. Betty Stevens on December 22, 1985. On December 23, 1985, the police filed a Criminal Complaint against appellant and attempted to serve him with an arrest warrant at his mother's home. When they arrived, Mrs. Stevens informed them that appellant had left her home

shortly after being questioned on December 22, and that she had not seen him since.

After an extensive search, appellant was finally located in Houston, Texas, following his arrest there under an assumed name. Appellant waived extradition and returned to Pennsylvania on April 24, 1986.

Appellant contends that the evidence was insufficient to convict him of the crimes charged because it consisted only of circumstantial evidence, which, therefore, resulted in a verdict based solely on speculation.

■ The law is well settled that circumstantial evidence can be sufficient to convict one of a crime, including first degree murder. *Commonwealth v. Holcomb*, 508 Pa. 425, 498 A.2d 833 (1985). In testing the sufficiency of circumstantial evidence, we view it not alone, but with all the inferences and conclusions logically drawn from that evidence. *Commonwealth v. Berrios*, 495 Pa. 444, 434 A.2d 1173 (1981). Of course, any verdict based wholly on inference and suspicion must be overturned. *Commonwealth v. Pronkoskie*, 498 Pa. 245, 445 A.2d 1203 (1982).

■ After reviewing the record, it is clear that the evidence, although circumstantial, was overwhelming to support appellant's conviction for first degree murder for killing Drayton Sphar and robbery as a result of his taking the victim's money, leather jacket, belt and wallet.

Having concluded that the evidence was sufficient to support the verdict, we shall now address appellant's particular claims of error.

Appellant first contends that the trial court erred in denying his request for a change of venue due to the allegedly extensive publicity concerning this case. He argues that the newspaper articles relating to this incident go beyond objective reporting to the point of becoming emotional and inflammatory.[8]

**8.** Pa.R.Crim.P. 312(a) provides:

(a) All motions for change of venue or for change of venire shall be made to the court in which the case is currently pending. Venue or

 The determination of whether to grant a change of venue rests within the sound discretion of the trial court whose decision thereon will not be disturbed on appeal absent an abuse of that discretion. *Commonwealth v. Buehl,* 510 Pa. 363, 508 A.2d 1167 (1986). In reviewing the trial court's decision, our inquiry must focus upon whether any juror formed a fixed opinion of the defendant's guilt or innocence as a result of the pre-trial publicity. *Commonwealth v. Bachert,* 499 Pa. 398, 453 A.2d 931 (1982). Pre-trial publicity will be deemed inherently prejudicial where the publicity is sensational, inflammatory, slanted towards conviction rather than factual and objective; revealed that the accused had a criminal record; referred to confessions, admissions or re-enactments of the crime by the accused; or derived from reports from the police and prosecuting officers. *Commonwealth v. Pursell,* 508 Pa. 212, 495 A.2d 183 (1985). However, even if one of these elements exists, a change of venue will not be required where there has been sufficient time between publication and trial for the prejudice to dissipate. *Commonwealth v. Casper,* 481 Pa. 143, 392 A.2d 287 (1978).

Appellant contends that extensive articles were disseminated throughout the Washington County area which contained emotional and inflammatory accounts of the incident. After reviewing these articles, however, we must disagree. Two of the articles were published within a week of the incident, both of which centered on factual accounts only and contained no references to a prior record or any confessions of the appellant. In March, 1986, an article appeared in the Pittsburgh Press which profiled the area's ten "most wanted" men. The article mentioned appellant's name, discussed briefly the facts surrounding the murder, and described appellant's appearance when last seen. There were two additional articles published four months later when appellant was finally apprehended and extradited to Washington County which, again, contained only minimal

venire may be changed by that court when it is determined after hearing that a fair and impartial trial cannot otherwise be had in the county where the case is currently pending.

facts concerning the murder. Finally, there was an article published in a local newspaper on the day before the trial commenced, the focus of which was the fact that there were, at that time, more suspected murderers being held in the Washington County jail than ever before. With regard to appellant, the article mentioned only that he was arrested in Texas and was awaiting trial for the murder of Drayton Sphar. We cannot conclude that any of the publicity surrounding this incident was either sensational or prejudicial.

■ Moreover, the results of *voir dire* clearly demonstrate that a change of venue was not necessary. Of the seventy potential jurors who were individually examined, thirty-four said they knew something about the case, twenty-six said they had no knowledge of the incident, and ten were not asked because they were excused for personal reasons. The thirty-four potential jurors were asked whether what they had heard would influence their decision during the trial. Only four of those jurors indicated that they may have been influenced, however, none of the four were ultimately chosen as members of the jury. The remaining thirty jurors polled had little recollection beyond the fact that appellant was charged with the stabbing death of Drayton Sphar. Indeed, a majority of those thirty knew virtually no details of the incident.

Our review yields no evidence of either actual prejudice or any pre-trial publicity that was so sensational or inflammatory as to justify a presumption of prejudice. Accordingly, we find no abuse of discretion in the trial court's refusal to grant a change of venue.

Appellant also alleges that the trial court erred in permitting the testimony of Susan Loveland. Appellant contends that he and Loveland were common-law husband and wife and, therefore, Loveland's testimony should have been excluded under the marital incompetency rule which prevents spouses from testifying against each other in criminal proceedings.[9]

9. 42 Pa.C.S. § 5913 provides as follows:

 Generally, the basis for invoking the marital privilege is the existence of a valid marriage. *Commonwealth v. Maxwell*, 505 Pa. 152, 477 A.2d 1309 (1984). A common-law marriage can only be created by an exchange of words in the present tense, *verba de praesenti*, spoken with the specific purpose that the legal relationship of husband and wife be thereby created. *Commonwealth v. Smith*, 511 Pa. 343, 513 A.2d 1371 (1986). Although Loveland testified that she and appellant lived together from August, 1984 until August, 1985; that the two orally agreed that they were husband and wife; and that they had one child together, appellant stipulated to the fact that he was married to one Sandra K. Gorby during the time he resided with Loveland and that he was not divorced from Sandra K. Gorby until November 14, 1985. Thus, appellant has no legal basis for asserting the marital incompetency privilege and the testimony of Loveland was properly admitted. *See Maxwell*, 505 Pa. 152, 477 A.2d 1309 (1984).

 Next, appellant contends that it was error for the trial court to refuse to sequester the jury. Pennsylvania Rule of Criminal Procedure 1111(a) provides that a trial judge may, in his or her discretion order sequestration of the jurors. A trial judge's refusal to order sequestration will not, however, be reversed unless the defendant makes a proper showing of potential prejudice. *Commonwealth v. Sourbeer*, 492 Pa. 17, 422 A.2d 116 (1980). In order to establish prejudice, appellant must show that the case is the subject of unusual or prejudicial publicity or that the jurors

Except as otherwise provided in this subchapter, in a criminal proceeding husband and wife shall not be competent or permitted to testify against each other, except that in proceedings for desertion and maintenance, and in any criminal proceeding against either for bodily injury or violence attempted, done or threatened upon the other, or upon the minor children of said husband and wife, or the minor children of either of them, or any minor child in their care or custody, or in the care or custody of either of them, each shall be a competent witness against the other, and except also that either of them shall be competent merely to prove the fact of marriage, in support of a criminal charge of bigamy alleged to have been committed by or with the other.

are subject to extraneous influences or pressures. *Commonwealth v. Jackson,* 481 Pa. 426, 392 A.2d 1366 (1978).

▮ Here, appellant merely asserts that it would be inconceivable to find that the jurors in a case of this magnitude would be able to refrain from discussing the case with family members or friends. However, appellant makes no claim of actual prejudice. Moreover, the trial court repeatedly cautioned the jurors throughout the entire trial to refrain from reading news accounts of the trial and not to discuss the case among themselves or with others. Accordingly, we find no abuse of discretion in the trial court's refusal to sequester the jurors. *See, Sourbeer,* 492 Pa. 17, 422 A.2d 116 (1980).

Appellant next assigns as error the admission of photographs which depicted the victim and the crime scene. It is appellant's contention that the photographs had no probative value and were corroborative only and, therefore, unnecessary.

▮ The admission of photographs is a matter vested within the sound discretion of the trial court whose ruling thereon will not be overturned absent an abuse of that discretion. *Commonwealth v. Strong,* 522 Pa. 445, 563 A.2d 479 (1989). Photographs which are deemed not inflammatory are admissible provided they are relevant and can assist the jury in understanding the facts. *Commonwealth v. Garcia,* 505 Pa. 304, 479 A.2d 473 (1984). Gruesome or potentially inflammatory photographs are admissible if the photographs are of such essential evidentiary value that their need clearly outweighs the likelihood of inflaming the minds and passions of the jurors. *Id.,* 505 Pa. at 313, 479 A.2d at 478.

▮ The photographs which were admitted depicted the victim and the crime scene. The Commonwealth offered these photographs to establish the element of intent to kill in order to prove murder in the first degree. We have held that the admission of photographs under similar circumstances is clearly proper. *See, e.g., Commonwealth v.*

*Edwards*, 521 Pa. 134, 555 A.2d 818 (1989); *Commonwealth v. Garcia*, 505 Pa. 304, 479 A.2d 473 (1984); *Commonwealth v. McCutchen*, 499 Pa. 597, 454 A.2d 547 (1982). In a case of criminal homicide, the fact finder must determine whether the intent of the actor was to inflict serious bodily harm or to kill. Clearly, the admission of these particular photographs which depicted a large gaping gash on the victim's neck as well as thirteen other knife wounds located on the victim's hands, arms, back and chest provided essential evidence tending to show that the defendant intended to inflict more than serious bodily injury. Additionally, the wounds on the victim's hands demonstrate that the victim was attempting to ward off the knife blows. Moreover, those photographs which show the wounds to the victim's torso provide essential evidentiary value since the slash marks in the victim's jacket, which the jury viewed and which was proven to be in appellant's possession after the killing, were consistent with those found on the victim's torso.

Clearly, the evidentiary value of these photographs outweighed any possible prejudice. Accordingly, the trial court did not abuse its discretion in permitting their introduction.[10]

Appellant next argues that the trial court erred in permitting the Commonwealth's reference to appellant's flight following the killing as evidence of guilt during closing arguments. Generally, a prosecutor's arguments to the jury are not a basis for a new trial unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility towards the defendant which prevented them from properly weighing the evidence and rendering a true verdict. *Commonwealth v. Smith*, 518 Pa. 15, 540 A.2d 246 (1988). Moreover, while evidence of flight alone is not sufficient to convict one of a crime, such evidence is relevant and admis-

**10.** Furthermore, the trial court repeatedly cautioned the jury, both at the time the photographs were admitted and again in its charge, as to the limited purpose for which the photographs were being admitted.

sible to establish an inference of guilt. *Commonwealth v. Dollman*, 518 Pa. 86, 541 A.2d 319 (1988); *Commonwealth v. Colson*, 507 Pa. 440, 490 A.2d 811 (1985); *Commonwealth v. Pegram*, 450 Pa. 590, 301 A.2d 695 (1973).

The trial court had previously ruled on a motion *in limine* that while evidence of appellant's flight would be admissible, the Commonwealth should refrain from dwelling on such as conclusive evidence of appellant's guilt. The only reference to flight occurred during closing argument wherein the Commonwealth stated as follows:

He [Trooper Luppino] finds that he's [appellant] left, nobody knows where he is. No one says much about where he is. And they search for him throughout the entire area and they put out a nation-wide search for him and ultimately, he is located four months later in Texas, living under a false name. I think that, to a large degree, speaks to itself as to the defendant's participation.

Here, the Commonwealth's passing reference to appellant's flight can not be deemed so prejudicial as to require a new trial. The Commonwealth simply set forth the facts and when stating the opinion that such fact constituted evidence of guilt, did not stress flight as the sole evidence of guilt.

Appellant next argues that it was error to permit the victim's wife, Christine Sphar, to testify regarding the victim's personal history and character. Appellant correctly states that in Pennsylvania, testimony regarding a victim's family status is inadmissible since such evidence has no probative value, is irrelevant and prejudicial. *See Commonwealth v. Story*, 476 Pa. 391, 383 A.2d 155 (1978). However, the testimony of Christine Sphar falls far short of the type of testimony prohibited in *Story*.

Mrs. Sphar testified that she and the victim had been married for ten years and that they had a two-year old son. Thereafter, she identified a picture, which was found in the victim's wallet, as being their son. In addition, she identified a leather jacket and the liner of that jacket; a

belt; and two wallets as belonging to her husband. Thus, the testimony was relevant for the purpose of identifying and authenticating certain items as belonging to the victim, all of which were identified as being in the possession of appellant following the murder, rather than for the purpose of creating sympathy for the victim and his family.

Finally, appellant contends that it was error for the trial court to permit the introduction of evidence of appellant's prior convictions during the penalty phase. He argues that the evidence presented was insufficient to find that he had a significant history of prior felony convictions.

During the penalty phase, the Commonwealth presented evidence of two aggravating circumstances. First, the Commonwealth offered, by incorporation of the record of the guilt phase, that appellant killed the victim while in the perpetration of a felony, that being the robbery of Drayton Sphar. 42 Pa.C.S. § 9711(d)(6). In addition, the Commonwealth introduced evidence of appellant's prior convictions in February, 1982, for robbery, aggravated assault and criminal conspiracy. These convictions were offered as proof of appellant's "significant history of felony convictions involving the use or threat of violence to the person." 42 Pa.C.S. § 9711(d)(9). The jury found both of these aggravating circumstances.

Prior to the sentencing hearing, appellant attempted to challenge the validity of the guilty pleas entered in 1982 at No. 1027 of 1981.[11] Following the trial court's denial of this challenge, appellant filed a petition pursuant to the Post Conviction Relief Act, 42 Pa.C.S. § 9541 et seq., alleging that the guilty pleas were invalid because appellant believed, at that time, that he was pleading guilty to theft by unlawful taking which is a misdemeanor and not to robbery, aggravated assault and criminal conspiracy which are felonies. Hearings were scheduled on appellant's Petition for Post–Conviction Relief before the Honorable Judge Bell. Prior to any testimony being taken, appellant presented a

11. This is the subject of the Superior Court appeal at No. 00689 Pittsburgh 1989.

motion for recusal of Judge Bell alleging that Judge Bell was biased because he also presided over the homicide trial at No. 555 of 1986 and subsequent to said trial, dismissed appellant's challenge to the validity of his guilty pleas at No. 1027 of 1981. The motion for recusal was denied. Following a hearing, the trial court denied appellant's request for relief under the Post–Conviction Relief Act. Appellant then appealed that determination to the Superior Court. This appeal was consolidated with appellant's appeal from an order of the trial court denying his *pro se* motion for appointment of counsel to represent him in his Post–Conviction Relief Act petition. Those consolidated appeals were then transferred to this Court for consolidation with the direct appeal from the judgment of sentence of death.

In his appeal from the trial court's denial of post-conviction relief, appellant first argues that the trial court erred in finding that he was not eligible for post-conviction relief because he was no longer serving any sentence at No. 1027 of 1981 and had long since surpassed the maximum term of his sentence. While the trial court, indeed, found that appellant was ineligible for such relief, it nevertheless considered the merits of appellant's allegations. Appellant's current claim, therefore, lacks any merit.

Appellant next argues that at the time he entered his pleas of guilty to the charges at No. 1027 of 1981, he believed that a plea bargain had been struck whereby he was entering a plea of guilty to a misdemeanor charge of theft by unlawful taking and that the more serious felony charges of robbery, aggravated assault and criminal conspiracy were being nolle prossed. He also argues that trial counsel was ineffective for failing to correct the guilty plea form and the sentencing order to reflect this allegedly intended plea bargain. In support of his argument, appellant notes that he received a sentence of only three to twenty-three and one-half months imprisonment. He argues that this lenient sentence reflects the court's belief that he pled only to the misdemeanor charge of theft. The

guilty plea form which appellant signed clearly states that he was pleading guilty to the enumerated felonies. No where on the form does it even mention the charge of theft. Moreover, the court notes in its sentencing order that it was imposing a lenient sentence.

■ In order for counsel to be found ineffective, it must be shown that there was arguable merit in the claim not asserted, that the failure to assert the same was not reasonable, and that the appellant was prejudiced thereby. *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987). As noted previously, all the records of the plea entered by appellant reveal that he intended to and, in fact, pled guilty to robbery, aggravated assault and criminal conspiracy. Moreover, the trial court notes in its opinion that at the hearing on appellant's P.C.R.A., trial counsel testified that he would have objected to the formal entry of the plea had there been a contrary plea arrangement. Based on the record, then, there is no basis for a finding of ineffectiveness.[12]

■ In his direct appeal, appellant argues that the record establishes only one prior felony conviction, that being the 1982 robbery conviction and that the record is silent as to the grade assigned to the convictions for aggravated assault and criminal conspiracy. The record, however, belies appellant's contention. The trial court reviewed those charges *in camera*, prior to the commencement of the penalty hearing, and determined that each of those charges were felonies.

Even assuming that appellant is correct, the sentence of death would still be valid since the jury found no mitigating circumstances and at least one aggravating circumstance.

12. Appellant also argues that Judge Bell should have recused himself from hearing the petition for post-conviction relief. In support thereof, he states only that because Judge Bell also presided over the homicide trial and the hearing on the validity of his guilty plea, Judge Bell could not preside impartially over the petition. Clearly, such an assertion does not establish a basis for recusal.

42 Pa.C.S. § 9711(c)(1)(iv); *See also, Commonwealth v. Smith*, 518 Pa. 15, 540 A.2d 246 (1988).[13, 14]

■ Finally, pursuant to our statutory duty to review death penalty cases to determine whether the sentence imposed is excessive or disproportionate to the penalty imposed in similar cases,[15] we have reviewed the data and information compiled by the Administrative Office of the Pennsylvania Courts (AOPC) pertaining to similar cases. *See Commonwealth v. Frey*, 504 Pa. 428, 475 A.2d 700 (1984). We conclude therefrom that the sentence of death is not excessive or disproportionate to the penalty imposed in similar cases. We also find that the evidence supports the jury's findings of two of the aggravating circumstances specified in subsection (d), 42 Pa.C.S. § 9711(h)(3)(ii), and that the sentence imposed was not the product of passion, prejudice or any other arbitrary factor, 42 Pa.C.S. § 9711(h)(3)(i).

For the foregoing reasons, we uphold the convictions and affirm the judgments of sentence. Additionally, we affirm the orders denying post-conviction relief and denying appointment of counsel.[16]

McDERMOTT, J., did not participate in this decision.

---

**13.** In *Blystone v. Pennsylvania*, 494 U.S. 299, 110 S.Ct. 1078, 108 L.Ed.2d 255 (1990), the United States Supreme Court upheld that portion of our death penalty statute which requires the jury to impose a sentence of death if it finds at least one aggravating circumstance and no mitigating circumstances.

**14.** Appellant also appealed the trial court's Order entered November 15, 1989, denying his motion for appointment of counsel to represent him in the preparation of a second petition for post-conviction relief. The trial court denied this motion on the basis that appellant had already been appointed counsel to represent him on his first post-conviction relief petition, the appeal of which was, at that time, still pending in the Superior Court. It is that exact appeal which we are currently determining. Accordingly, we affirm the Order denying appointment of counsel.

**15.** 42 Pa.C.S. § 9711(h)(3)(iii).

**16.** The Prothonotary of the Western District is directed to transmit, as soon as possible, the full and complete record of the trial, sentencing

hearing, imposition of sentence and review by this Court to the Governor. 42 Pa.C.S. § 9711(i).