615 A.2d 716

COMMONWEALTH of Pennsylvania, Appellee,

v.

Craig WILLIAMS, Appellant.

Supreme Court of Pennsylvania.

Argued April 6, 1992.

Decided Oct. 9, 1992.

266

Norris E. Gelman, Philadelphia, for appellant.

Ronald Eisenberg, Deputy Dist. Atty., Catherine Marshall, Chief, Appeals Div., Hugh Burns, Philadelphia, Robert A. Graci, Chief Deputy Atty. Gen., for appellee.

Before NIX, C.J., and FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION OF THE COURT

CAPPY, Justice.

This is an automatic direct appeal [1] from a sentence of death imposed upon appellant, Craig Williams, by the Court of Common Pleas of Philadelphia County, following his conviction of murder of the first degree. We affirm the judgment of sentence of death.

1. See, 42 Pa.C.S. §§ 722(4), 9711(h)(1), Pa.R.A.P. 702(b) and 1941.

A jury found appellant guilty of murder of the first degree,[2] recklessly endangering another person,[3] and possessing instruments of crime.[4] A separate penalty hearing was held regarding the murder conviction. The jury found one aggravating circumstance and no mitigating circumstances, and fixed appellant's penalty at death. Sentence of death was immediately imposed on the homicide count,[5] and sentencing on the remaining counts was deferred pending the receipt of post-trial motions, which were subsequently filed, argued and denied. Thereafter, appellant was sentenced to imprisonment of one to two years on the reckless endangerment count, and imprisonment of two and one-half to five years for possessing an instrument of crime, both to be served concurrently with the sentence for murder.

As in all cases where the death penalty has been imposed this Court must conduct an independent review of the sufficiency of the evidence without regard to whether the appellant has challenged the conviction on that ground. *Commonwealth v. Zettlemoyer*, 500 Pa. 16, 26–27 n. 3, 454 A.2d 937, 942 n. 3 (1982), *cert. denied*, 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 *reh'g denied*, 463 U.S. 1236, 104 S.Ct. 31, 77 L.Ed.2d 1452 (1983). The test for establishing sufficiency is whether the evidence, and all reasonable inferences deducible therefrom, viewed in the light most favorable to the Commonwealth as verdict-winner, are sufficient to establish all the elements of the offense(s) beyond a reasonable doubt. *Commonwealth v. Rhodes*, 510 Pa. 537, 510 A.2d 1217 (1986). The following facts established by the evidence produced by the Commonwealth clearly satisfy this test.

On April 3, 1987 Gordon Russell was 57 years old and resided above a bar that he owned and tended in the vicinity of North Lambert and Norris Streets in Philadelphia. At approximately 5:30 p.m. on this day Gordon Russell was walking south on North Lambert Street towards Norris Street

2. 18 Pa.C.S. § 2502(a).
3. 18 Pa.C.S. § 2705.
4. 18 Pa.C.S. § 907.
5. 42 Pa.C.S. § 9711.

on his way home from a store located on Diamond Street. As Gordon Russell crossed North Lambert Street, the appellant came running down North Lambert Street from behind Gordon Russell and began shooting a .38 calibre revolver at Erica Riggins who had stopped her blue Cadillac in the middle of North Lambert Street just south of Gordon Russell. Gordon Russell suffered a fatal gunshot wound to the back as he passed between appellant and the blue Cadillac. Immediately after Gordon Russell was shot, Erica Riggins fled the scene in her Cadillac with the appellant in pursuit on foot. A warrant was issued for appellant's arrest on April 12, 1987. After appellant could not be located, this matter was assigned to the Philadelphia Police Fugitive Squad, which arrested him on April 24, 1987 in a different neighborhood.

The Commonwealth presented the testimony of Kevin Harrell, who stated that appellant was at the scene on North Lambert Street and was holding a gun as he moved south towards Gordon Russell, Erica Riggins and the blue Cadillac. Kevin Harrell further testified that after he heard gunshots he saw Gordon Russell fall to the ground to the right of the blue Cadillac and in front of and to the right of appellant. Kevin Harrell noticed no gunshots being fired by the occupants of the blue Cadillac.

The Commonwealth also presented the testimony of Catherine Rivers, who stated that she watched the homicide take place while she was looking out a second floor window of her residence in search of her children who had gone to the store. Catherine Rivers stated that a young boy had come running around the corner shooting at a blue car parked in the street. Catherine Rivers further testified that no gunshots were fired by the occupants of the blue car and that Gordon Russell had crumpled over a vehicle adjacent to the blue car when the shots were fired. While Catherine Rivers did not see the face of the shooter, appellant matched the physical description that she gave to the police.

The testimony of these two Commonwealth witnesses, and that of police officers, detectives and the medical examiner is consistent with the physical evidence, which indicates that

Gordon Russell was struck in the back by a projectile fired by someone who was to his left and slightly behind him. Furthermore, the jury could infer motive for this shooting from the evidence presented, as Erica Riggins had harassed and severely injured appellant's girlfriend, Jean Hargrove, two days before the murder. Jean Hargrove was seven months pregnant with appellant's child at that time.

■ The appellant did not testify on his behalf, but presented four witnesses who claimed to have been eyewitnesses to the shooting. These witnesses all testified that Erica Riggins had fired several shots at appellant and had killed Gordon Russell. However, these witnesses each described different scenarios for the shooting, none of them saw appellant with a gun, and none of them came forward with information regarding the shooting until less than a week before trial. Clearly, it was up to the jury to evaluate the credibility of these witnesses and determine whether to believe all, part, or none of their testimony. *Commonwealth v. Edwards*, 521 Pa. 134, 555 A.2d 818 (1989). The jury chose not to believe their testimony. Accordingly, we find that the evidence presented by the Commonwealth was sufficient to sustain appellant's convictions.

■ Through appellate counsel, appellant asserts nine claims of ineffective assistance of trial counsel.[6] In order for appellant to prevail on a claim of ineffectiveness he must demonstrate that: (1) the underlying claim is of arguable merit; (2) the particular course chosen by counsel did not have some reasonable basis designed to effectuate his interests; and (3) counsel's ineffectiveness prejudiced him. *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987). Furthermore, counsel can never be found ineffective for having elected not to raise a meritless claim. *Commonwealth v.*

6. Appellant has also raised numerous issues simultaneously through a supplemental *pro se* brief. We have reviewed all of these claims to the extent that we were able to discern valid claims of error having some basis in the law, and none of these claims have merit. A revised statement of these issues is set forth fully in Appendix "A" attached hereto.

*Pettus*, 492 Pa. 558, 424 A.2d 1332 (1981); *Commonwealth v. Giknes*, 491 Pa. 215, 420 A.2d 419 (1980).

## GUILT PHASE

■ First, appellant claims that trial counsel was ineffective for failing to object to a portion of the prosecutor's closing argument, which he claims "asked the jury to infer guilt from his failure to prove his innocence or the disbelief of his defense." Specifically, the prosecutor stated:

The integrity of this system of justice, ladies and gentlemen, is that people are to be tested on their credibility and that not only goes to the credibility of the Commonwealth witnesses but also to the credibility of defense witnesses. It is true the defense has no obligation to present person one to the courtroom but once he does that, ladies and gentlemen, and you are to find out one single witness that he brings here perjured himself and suborned that perjury by presenting it, you may find, ladies and gentlemen, evidence of his guilt even if you had some previous reasonable doubt with regard to the Commonwealth's case.

(N.T. 420).

■ While appellant is correct to the extent that there is no rule of law that invites a jury to infer guilt from the failure of a defendant to establish his innocence or from the fact that a jury disbelieves his defense, *Commonwealth v. Pounds*, 490 Pa. 621, 633, 417 A.2d 597 (1980), his reliance thereon is misplaced in this case. Here, the prosecutor was not commenting on his failure to prove his defense, but rather, on the manner in which he sought to prove his defense. It is axiomatic that actions taken to mislead and to conceal guilt may be treated as circumstantial evidence of consciousness of guilt. *Commonwealth v. Dollman*, 518 Pa. 86, 541 A.2d 319 (1988). The jury is obviously permitted to find evidence of guilt should they determine that appellant's defense (Erica Riggins did the shooting) was fabricated, presented through false testimony at trial and that appellant himself suborned that perjury. Such a finding by the jury would support the usual broad inference from any fraud. Wigmore, *Evidence,*

276

§ 279 at 141 (Chadbourn Rev., 1979). Accordingly, trial counsel cannot be found ineffective for not objecting on this basis. *Commonwealth v. Pierce,* 515 Pa. 153, 527 A.2d 973 (1987); *Commonwealth v. Pettus,* 492 Pa. 558, 424 A.2d 1332 (1981); *Commonwealth v. Giknes,* 491 Pa. 215, 420 A.2d 419 (1980).

 Second, appellant claims that trial counsel was ineffective for failing to object to the prosecutor's alleged reference during summation to appellant's post-arrest silence and silence at trial. Specifically, the prosecutor stated:

Now, ladies and gentlemen, if this defendant was indeed the purported victim of this shooting incident, what does he have to hide? I mean all he has to do is say this gal was shooting at me, you know. He didn't have to run away from his home. He can just stay right there. He doesn't necessarily have to say anything at all if he chooses not to but he certainly doesn't have to run and hide and that is why the law says that consciousness of guilt may be inferred from the flight of the defendant from his usual whereabouts. That has been substantially proven here and you may consider that in determining the guilt of the defendant.

(N.T. 429).

 Once again, while appellant is correct that the Commonwealth is precluded from asking the jury to draw an adverse inference from post-arrest silence, *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *Commonwealth v. Turner,* 499 Pa. 579, 454 A.2d 537 (1982), his reliance thereon is misplaced in this case. Here the prosecutor was not commenting on appellant's post-arrest silence, but rather, upon his flight and concealment following the killing. While evidence of flight alone is not sufficient to convict one of a crime, such evidence is relevant and admissible to establish an inference of guilt. *Commonwealth v. Gorby,* 527 Pa. 98, 588 A.2d 902 (1991); *Commonwealth v. Dollman,* 518 Pa. 86, 541 A.2d 319 (1988); *Commonwealth v. Colson,* 507 Pa. 440, 490 A.2d 811 (1985), *cert. denied,* 476 U.S. 1140, 106 S.Ct. 2245, 90 L.Ed.2d 692 (1986).

The portion of the prosecutor's closing argument upon which appellant relies is essentially her final comment after

reviewing the following evidence of appellant's flight and concealment after the killing: appellant immediately fled the scene of the shooting; appellant could not be found at his residence; a man questioned approximately nine days after the murder and who resided at appellant's residence had not seen him for some time and did not know his whereabouts; appellant had absented himself from his girlfriend, Jean Hargrove, who was pregnant with his child, and from whom appellant had been borrowing a 1983 Jaguar on a regular basis; appellant could not be found on the streets by the police despite "Wanted Messages" broadcast over police radio once an hour for the first twenty-four hours and every two hours thereafter; and appellant was eventually apprehended in a different neighborhood in the presence of another female friend.

█ Thus, in the context of the closing argument, we find that the prosecutor's comment was permissible given the evidence of flight and concealment presented by the Commonwealth. Moreover, to the extent that this statement could have been interpreted by the jury as a comment on appellant's post-arrest silence, any conceivable prejudice arising therefrom would have been cured by the "no-adverse inference" instructions given by the trial court. Accordingly, trial counsel cannot be found ineffective for not objecting on this basis. *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987); *Commonwealth v. Pettus*, 492 Pa. 558, 424 A.2d 1332 (1981); *Commonwealth v. Giknes*, 491 Pa. 215, 420 A.2d 419 (1980).

█ Third, appellant claims that trial counsel was ineffective for failing to object to the prosecutor delivering her personal opinion of guilt to the jury. Specifically, the prosecutor stated:

It is no doubt, there is not doubt I think from this evidence that indeed his intention was to shoot at or kill Erica Riggins and hit instead Gordon Russell.

(N.T. 423).

This argument misses the distinction between an expression of personal opinion and argument based upon the evidence as

to how the jury should resolve conflicting testimony. This Court has found similar arguments as to how a jury should resolve conflicting testimony are not expressions of personal opinion if they are based upon or related back to the evidence. *Commonwealth v. Johnson*, 527 Pa. 118, 588 A.2d 1303 (1991); *Commonwealth v. Graham*, 522 Pa. 115, 560 A.2d 129 (1989). As the statement by the prosecutor in the case *sub judice* followed an extensive peroration on the testimony and physical evidence from the entire trial, and the prosecutor's subsequent argument specifically derived from this evidence, we find that it was not improper. Accordingly, trial counsel cannot be found ineffective for not objecting on this basis. *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987); *Commonwealth v. Pettus*, 492 Pa. 558, 424 A.2d 1332 (1981); *Commonwealth v. Giknes*, 491 Pa. 215, 420 A.2d 419 (1980).

Fourth, appellant refers to his three previous claims and argues that the cumulative impact of the prosecutor's misconduct compels reversal, and that trial counsel was ineffective for failing to object on the basis of this "cumulative impact." This claim is mere makeweight, and a rather blatant attempt to bootstrap. We have found *no* misconduct on the part of the prosecutor, and no number of *failed* claims may collectively attain merit if they could not do so individually. Appellant's reliance upon error arising from the cumulative impact of "repeated *improper* remarks" is misplaced.[7] Accordingly, trial counsel cannot be found ineffective for not objecting on this basis. *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987). *Commonwealth v. Pettus*, 492 Pa. 558, 424 A.2d 1332 (1981); *Commonwealth v. Giknes*, 491 Pa. 215, 420 A.2d 419 (1980).

## PENALTY PHASE

Fifth, appellant claims that trial counsel was ineffective for failing to object when the trial court instructed the jury that "one of the mitigating circumstances may be that the

---

7. *Commonwealth v. Hickman*, 319 Pa.Super. 261, 466 A.2d 148 (1983); *Commonwealth v. Baranyai*, 296 Pa.Super. 342, 442 A.2d 800 (1982); and *Commonwealth v. Kramer*, 389 Pa.Super. 136, 566 A.2d 882 (1989).

defendant was under the influence of *extreme* mental or emotional disturbance" (N.T. 529). In addition, in failing to object to the trial court's instruction that another mitigating circumstance may be that "the defendant acted under *extreme* duress or acted under *substantial* domination of another person." (N.T. 531). Specifically, he claims that the trial court unconstitutionally limited the range of mitigating circumstances that the jury could consider by requiring that any mental or emotional disturbance or duress had to be *extreme*, and that any domination had to be *substantial*.

While we agree with appellant that the Eighth Amendment to the United States Constitution requires that the sentencer must consider any relevant mitigating evidence, we cannot conclude that the trial court herein unconstitutionally limited the range of mitigating circumstances that the jury could consider through its use of the words *extreme* and *substantial*. The trial court's instructions merely recited verbatim the relevant statutory mitigating circumstances found at 42 Pa.C.S. § 9711(e)(2) and (5). In addition, the trial court also instructed the jury on the "catchall" provision "any other evidence of mitigation concerning the character and record of the defendant and the circumstances of his offense," 42 Pa. C.S. § 9711(e)(8). The modifiers of which appellant complains serve to inform, rather than hinder, the jury regarding its discretion with respect to the specific mitigating circumstances found at 42 Pa.C.S. § 9711(e)(2) and (5). To the extent that relevant evidence nevertheless may not qualify for one of those two enumerated mitigating circumstances, it can always be considered under subsection (e)(8). *Commonwealth v. Peterkin*, 511 Pa. 299, 513 A.2d 373 (1986), *cert. denied*, 479 U.S. 1070, 107 S.Ct. 962, 93 L.Ed.2d 1010 (1987).

This precise issue was addressed and rejected by the Supreme Court of the United States in *Blystone v. Pennsylvania*, 494 U.S. 299, 110 S.Ct. 1078, 108 L.Ed.2d 255 (1990), wherein the Court stated:

The trial judge gave the jury examples of mitigating circumstances that it was entitled to consider, essentially the list of factors contained in § 9711(e). Among these, the

judge stated that the jury was allowed to consider whether petitioner was affected by an "extreme" mental or emotional disturbance, whether petitioner was "substantially" impaired from appreciating his conduct, or whether petitioner acted under "extreme" duress. Petitioner argues that these instructions impermissibly precluded the jury's consideration of lesser degrees of disturbance, impairment, or duress. This claim bears scant relation to the mandatory aspect of Pennsylvania's statute, but in any event we reject it. The judge at petitioner's trial made clear to the jury that these were merely items they could consider, and that it was also entitled to consider "any other mitigating matter concerning the character or record of the defendant, or the circumstances of his offense." App. 12–13. This instruction fully complied with the requirements of *Lockett* [*v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) ] and *Perry* [*v. Lynaugh*, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989) ].

*Id.* at 308, 110 S.Ct. at 1084.

Nevertheless, appellant contends that subsection (e)(8) does not function in the manner described in this Court's decisions and by the Supreme Court of the United States in *Blystone.* He argues that a "reasonable juror" upon rejecting such evidence for its failure to meet the "extremity" test, will believe that he is precluded from considering it later as "non-extreme" mental or emotional disturbance under subsection (e)(8). This argument is severely flawed as it presumes that a reasonable juror will ignore the clearly open-ended nature of the reference to "any other evidence of mitigation" in (e)(8), and conclude that "any other evidence" really means "any other categories" of evidence. Accordingly, we find that trial counsel cannot be found ineffective for not objecting on this basis. *Commonwealth v. Pierce,* 515 Pa. 153, 527 A.2d 973 (1987); *Commonwealth v. Pettus,* 492 Pa. 558, 424 A.2d 1332 (1981); *Commonwealth v. Giknes,* 491 Pa. 215, 420 A.2d 419 (1980).

Sixth, appellant similarly claims that trial counsel also failed to object to the trial court's use of the words extreme

and substantial on the basis that they are void for vagueness. Appellant argues that these words are not well understood, and thus, the jury is forced to invent its own definitions, which results in completely unrestricted discretion. We disagree.

In *Commonwealth v. Beasley,* 504 Pa. 485, 475 A.2d 730 (1984), this Court considered and dismissed this same claim:

> Appellant further contends that certain language employed in the statute's enumeration of aggravating and mitigating circumstances, to be weighed by the jury in determining whether the death penalty should be imposed, are so vague as to invite arbitrary and capricious imposition of the death penalty. The challenged language includes, *inter alia,* the phrases "significant history of prior criminal convictions" (42 Pa.C.S.A. § 9711(e)(1)), "extreme mental or emotional disturbance" (42 Pa.C.S.A. § 9711(e)(2)), "age of the defendant" (42 Pa.C.S.A. § 9711(e)(4)), "participation in the homicidal act was relatively minor" (42 Pa.C.S.A. § 9711(e)(7)), "capacity of the defendant ... to conform his conduct to the requirements of law...." (42 Pa.C.S.A. § 9711(e)(3)). In reviewing an identical claim of vagueness asserted against the corresponding portion of the death penalty statute of the State of Florida, which employed virtually identical language, the Supreme Court of the United States rejected the vagueness claim, noting that a jury's evaluation of the aggravating and mitigating circumstances, as enumerated, requires no more line drawing than is commonly required of a factfinder in any lawsuit. *Proffitt v. Florida,* 428 U.S. 242, 257, 96 S.Ct. 2960, 2969, 49 L.Ed.2d 913, 925–926 (1976).

*Id.* 504 Pa. at 498, 475 A.2d at 737. Accordingly, we find that trial counsel cannot be found ineffective for not objecting on this basis. *Commonwealth v. Pierce,* 515 Pa. 153, 527 A.2d 973 (1987); *Commonwealth v. Pettus,* 492 Pa. 558, 424 A.2d 1332 (1981); *Commonwealth v. Giknes,* 491 Pa. 215, 420 A.2d 419 (1980).

Seventh, appellant claims that trial counsel was ineffective for failing to object to improper bolstering of the Commonwealth's case, which occurred when the trial court

informed the jury that "there appears to be no evidence that the defendant acted under the substantial domination of another person." Specifically, during the trial court's instructions on penalty, it stated:

Another possible mitigating circumstance under the death penalty statute is that the defendant—the actual mitigating circumstance as stated in the law is that the defendant acted under extreme duress or acted under the substantial domination of another person. Those two things are put together in the law as a mitigating circumstance.

Although there appears to be no evidence that the defendant acted under the substantial domination of another person, there may be evidence that the defendant acted under extreme duress. Again, that's for you to decide. Duress may be considered or defined as forcible compulsion or action by one person which compels another person, that is compels the defendant to do what he would not otherwise do.

Again, as I say, it's important for you to decide whether this mitigating circumstance, in essence that the defendant acted under extreme duress, has been shown by a preponderance of the evidence to exist here. If you find from the evidence at trial or the evidence at the sentencing phase or both that such a mitigating circumstance exists, then you should find such mitigating circumstance.

(N.T. 531).

Thereafter, during deliberations, the jury asked the trial court to "[p]lease explain acted under the substantial domination of another person," and the trial court stated:

Let me say what I said before and perhaps give a little further explanation. The death penalty statute, as I told you previously, sets out specific delineated aggravating circumstances and mitigating circumstances. Actually, in the language of the death penalty law itself it lists them and one of the things—one of the mitigating circumstances which it lists is in one sentence as you have it there, the defendant acted under extreme duress or acted under the substantial domination of another person. That's how the death penal-

ty statute is written. They put those two things together in one sentence as one of the possible mitigating circumstances and as a result that's how I define it or that's how I read it to you and that's how it was included in your verdict slip.

As I said to you earlier, another possible mitigating circumstance in the statute is that the defendant acted under extreme duress or under the substantial domination of another person and I said to you although there appears to be no evidence that the defendant acted under the substantial domination of another person, there may be evidence that the defendant acted under extreme duress. That is for you to decide.

Duress may be considered or may be defined as forcible compulsion or action by a person which compels another person to do, that is which compels the defendant to do what he said he would not otherwise do, but I was defining duress there. I don't want to take any possible finding away from you and that's why I said to you although there appears to be no evidence that the defendant acted under substantial domination of another person, there may be evidence the defendant acted under extreme duress and I defined extreme duress for you.

I don't know if further explanation of substantial domination of another person is necessary for you. The common sense definition of that is where one person dominates or in essence controls the conduct of another person and does so substantially. The reason that that was submitted to you as a mitigating circumstance is because it is in the law in the same sentence that the extreme duress mitigating circumstance is and that's why I submitted it to you together.

(N.T. 540).

Appellant's claim arises from the testimony of Jean Hargrove that Erica Riggins had cut her, and threatened to "finish the job" and make her lose the baby she was carrying. He claims that because this information was communicated to him prior to the murder, it is evidence that he was acting under the "substantial domination" of Jean Hargrove when he

killed Gordon Russell, which the trial court overlooked. We disagree.

Upon review of the record we conclude that there was no evidence presented that could support a finding that appellant was acting under the substantial domination of Jean Hargrove. Mitigating circumstance 42 Pa.C.S. § 9711(e)(5) has two components, extreme duress or substantial domination of another person. While appellant could have been affected by the injury to Jean Hargrove and the threats against his unborn child by Erica Riggins, this could only support a finding that he was acting under duress when he intended to kill Erica Riggins. The record does not contain the slightest hint that Jean Hargrove made any request or demand of appellant or controlled him in any manner.

Thus, we find that the trial court acted properly by defining the entire mitigating circumstance, and then limiting it based upon the evidence presented, a limitation which was to some extent overly generous. The trial court is only required to instruct the jury on the enumerated mitigating circumstances of which there is some evidence. 42 Pa.C.S. § 9711(c)(1)(ii). By referencing both components of this mitigating circumstance the trial court was unquestionably acting properly with regards to the substantial domination component of this mitigating circumstance, which is closely related to the extreme duress component, so as not to take any possible finding away from the jury no matter how remote. If anything, appellant was aided rather than prejudiced by this statement by the trial court. Accordingly, we find that trial counsel cannot be found ineffective for not objecting on this basis. *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987); *Commonwealth v. Pettus*, 492 Pa. 558, 424 A.2d 1332 (1981); *Commonwealth v. Giknes*, 491 Pa. 215, 420 A.2d 419 (1980).

Eighth, appellant claims that trial counsel was ineffective in failing to object to the trial court's instructions concerning his burden of proving mitigating circumstances by a preponderance of the evidence, which did not employ the "slightly-tipping scale" analogy provided in Pennsylvania Sug-

gested Civil Jury Instruction 5.50. Specifically, this *suggested* instruction provides:

When a party has the burden of proof on a particular issue, his contention on that issue must be established by a fair preponderance of the evidence. The evidence establishes a contention by a fair preponderance of the evidence if you are persuaded that it is more probably accurate and true than not.

To put it another way, think, if you will, of an ordinary balance with a pan on each side. Onto one side of the scale, place all of the evidence favorable to the plaintiff; onto the other, place all the evidence favorable to the defendant. If, after considering the comparable weight of the evidence, you feel the scales tip, ever so slightly or to the slightest degree, in favor of the plaintiff, your verdict must be for the plaintiff. If the scales tip in favor of the defendant, or are equally balanced, your verdict must be in favor of the defendant.

In the case *sub judice,* the trial court instructed the jury on the burden of proof as to mitigating circumstances as follows:

The defense has a lesser burden with regard to proving mitigating circumstances. The defense must prove mitigating circumstances but they must prove it by a preponderance of the evidence and that is a lesser standard, not as great a standard as beyond a reasonable doubt. A preponderance of the evidence in essence is proof that something is more likely than not.

(N.T. 530).

Significantly, appellant does not dispute the accuracy of the trial court's "more likely than not" formulation, but argues that the "tipping-scales" analogy is absolutely necessary to prevent the jury from interpreting "more likely than not" as requiring a higher degree of probability than is called for under the circumstances. We do not agree. The instruction by the trial court was correct and reasonably simple. There is no evidence that the jury was at all confused regarding this burden of proof, and any imagined advantage to the defendant from the "tipping-scales" analogy is pure speculation. Accord-

ingly, we find that trial counsel cannot be found ineffective for not objecting on this basis. *Commonwealth v. Pierce,* 515 Pa. 153, 527 A.2d 973 (1987); *Commonwealth v. Pettus,* 492 Pa. 558, 424 A.2d 1332 (1981); *Commonwealth v. Giknes,* 491 Pa. 215, 420 A.2d 419 (1980).

▇▇▇ Ninth, appellant argues that trial counsel was ineffective because his closing argument ignored evidence of mental or emotional disturbance, extreme or not, and failed to argue substantial domination by Jean Hargrove. Specifically, defense counsel argued as follows:

> Don't give the defendant the death penalty because of something maybe that I'm responsible for. That's what the prosecution really wants you to do. She wants you to give the death penalty on the basis of the testimony of Catherine Rivers and the facts that he snatched a chain, that he grabbed some money from somebody's pocket and according to them because his girlfriend seven months pregnant was slashed in the face, almost lost his baby, they're saying he didn't have sufficient provocation if you believe their witnesses to do this. I don't know who wouldn't be provoked on this jury. If one of your loved ones was slashed in the face, shot at, beat up, almost lost a baby, say you wouldn't be provoked.

> The Judge is going to tell you that if you find that there was provocation in this case, that's a mitigating circumstance. If you find that as a result of that provocation the defendant was under duress, mental duress, and upset at the time of this, that's also a mitigating circumstance. If you find both those mitigating circumstances, the Judge is going to tell you that if they outweigh the aggravating circumstances, you can't give him the death penalty under the law.

(N.T. 520).

It is true that defense counsel did not precisely reference the language of the mitigating circumstances of which there was some evidence verbatim, or attempt to characterize certain evidence as falling within a specific mitigating circumstance. However, it is clear that defense counsel did argue

the facts concerning Jean Hargrove's injuries and how this could have provoked appellant, and how that could lead to duress, mental duress, and upset at the time of the murder. Clearly, to the extent that there was any evidence of "extreme emotional or mental disturbance," 42 Pa.C.S. § 9711(e)(2) or "extreme duress," 42 Pa.C.S. § 9711(e)(5), it was fully exploited by defense counsel.[8]

The jury heard the evidence, which appellant believes supports mitigation. The jury received instructions from the trial court on the mitigating circumstances of which there was some evidence. We believe defense counsel sufficiently focused the jury on its power to find either of the above mitigating circumstances or mitigation under the "catchall" provision in 42 Pa.C.S. § 9711(e)(8) based upon the evidence presented. By not specifically tying his argument to one particular subsection, counsel encouraged a greater range of favorable responses and maximized appellant's chances, given the weakness of the purported evidence in mitigation and the overwhelming evidence of guilt. Therefore, we find no sufficient basis upon which to conclude that trial counsel was ineffective in presenting his closing argument with respect to mitigating circumstances during the penalty phase. *Commonwealth v. Pierce,* 515 Pa. 153, 527 A.2d 973 (1987); *Commonwealth v. Pettus,* 492 Pa. 558, 424 A.2d 1332 (1981); *Commonwealth v. Giknes,* 491 Pa. 215, 420 A.2d 419 (1980).

▆▆ In addition, appellant argues that the death sentence in this case is excessive and disproportionate to the penalty imposed in similar cases. While such a determination is but one of several obligations imposed upon us pursuant to 42 Pa.C.S. § 9711(h)(3), we will address it first because appellant has raised specific claims with regards thereto.

Appellant argues that the death sentence is excessive in this case because he did not intend to kill Gordon Russell and was convicted of murder of the first degree based upon "trans-

8. As there was no evidence of record that Williams was acting under the "substantial domination" of another, we cannot fault trial counsel for failing to argue the existence of that type of mitigating circumstance provided in 42 Pa.C.S. 9711(e)(5).

ferred intent." This position is ludicrous. The jury found that appellant *did* intend to kill and *did* kill, and he has no basis to compare himself with those who did not. One who intentionally kills, but whose fatal blow falls on a mistaken victim, is if anything *more* culpable than murderers who do not carelessly kill innocent bystanders. This type of murder, is unquestionably not merely "fortuitous" as thoughtlessly labeled by counsel. It is not the product of chance or accident. Nor is it unforeseeable, unexpected or without known cause, but rather, it is the product of a heart turned not only against the intended victim but also against all those anonymous but within range of the murder weapon.

As for appellant's claim that his death sentence is disproportionate because his intention to kill Erica Riggins was transferred to Gordon Russell, we find that no such lesser degree of intent exists for purposes of our mandated disproportionality review. Appellant was convicted of murder of the first degree by a jury, which found sufficient evidence of aggravation arising from the grave risk of death to another person in addition to Gordon Russell and insufficient evidence in mitigation. The penalty of death has been imposed in this Commonwealth on numerous occasions under similar circumstances. It is a penalty which has also been imposed on those who do not kill, but aid or direct others in so doing. *Commonwealth v. Frey,* 504 Pa. 428, 475 A.2d 700, *cert. denied,* 469 U.S. 963, 105 S.Ct. 360, 83 L.Ed.2d 296 (1984). Therefore, we conclude that the sentence of death is neither excessive nor disproportionate for these reasons given the facts established in this case.

■ Finally, pursuant to 42 Pa.C.S. § 9711(h)(3), we have the duty to affirm the sentence of death unless we determine that:

(i) the sentence of death was the product of passion, prejudice or any other arbitrary factor;

(ii) the evidence fails to support the finding of at least one aggravating circumstance specified in subsection (d); or

(iii) the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the

circumstances of the crime and the character and record of the defendant.

Upon such review, we find that the sentence imposed was not the product of passion, prejudice or any other arbitrary factor. We also find that the evidence supports the jury's finding of the aggravating circumstance specified in 42 Pa.C.S. § 9711(d)(7) (knowingly created a grave risk of death to another person in addition to the victim of the offense), as appellant discharged his firearm in the direction of Erica Riggins and the other occupants of her vehicle with the intention of killing Erica Riggins.

In addition, upon our review of the data and information compiled and monitored by the Administrative Office of Pennsylvania Courts,[9] we find no excess or disproportionality when compared to the sentences imposed in similar cases. We emphasize that the statute requires a verdict of death in those instances where the jury finds at least one aggravating circumstance and no mitigating circumstances, 42 Pa.C.S. § 9711(c)(1)(iv). Therefore, all similarly situated defendants receive the same sentence, and thus, the death penalty cannot be considered excessive or disproportionate to the penalty imposed in cases involving these circumstances. Furthermore, upon consideration of the manner in which appellant committed this homicide, together with his character and record, we find no basis upon which to conclude that his sentence is excessive or disproportionate to the penalty imposed in similar cases.

Accordingly, we affirm the judgment of sentence of death.[10] Judgments of sentence affirmed.

LARSEN, J., did not participate in the consideration or decision in this case.

9. *See Commonwealth v. Frey,* 504 Pa. 428, 475 A.2d 700, *cert. denied,* 469 U.S. 963, 105 S.Ct. 360, 83 L.Ed.2d 296 (1984).

10. The Prothonotary of the Supreme Court is directed to transmit the complete record of the case *sub judice* to the Governor of Pennsylvania. 42 Pa.C.S. § 9711(i).

McDERMOTT, J., did not participate in the decision in this case.

NIX, C.J., files a concurring and dissenting opinion.

APPENDIX A

(1) Whether the testimony of Commonwealth witnesses, Kevin Harrell and Catherine Rivers was self-contradictory, unreliable and untrustworthy, and thus, insufficient to support a finding of guilt beyond a reasonable doubt.

(2) Whether trial counsel rendered ineffective assistance by failing to request that the trial court enter a Directed Verdict of not guilty based upon the insufficiency of the evidence presented by the Commonwealth.

(3) Whether trial counsel rendered ineffective assistance by failing to demur to the charge of murder in the first degree based upon the insufficiency of the evidence presented by the Commonwealth.

(4) Whether trial counsel rendered ineffective assistance by failing to request a cautionary instruction that Catherine Rivers' police statement should not be considered as substantive evidence and that the prosecutor was permitted to read from the statement only for the purpose of rebutting an inference of fabrication.

(5) Whether trial counsel rendered ineffective assistance by failing to request an acquittal instruction, which would have defined the elements of the crime charged, the applicable burden of proof, and the jury's ability to acquit the defendant if the Commonwealth failed to prove any of the required elements beyond a reasonable doubt.

(6) Whether trial counsel rendered ineffective assistance by failing to reiterate his objection to the trial court's flight instruction before the jury retired in order to preserve the issue of flight for appeal.

(7) Whether trial counsel rendered ineffective assistance of counsel by failing to reiterate his objection to the trial court's denial of his request for a "missing witness" [Erica Riggins] instruction before the jury retired in order to preserve the issue for appellate review.

(8) Whether trial counsel was ineffective in failing to object to the portion of the trial court's instructions to the jury, wherein the trial court stated that "Catherine Rivers does certainly present testimony that supports the Commonwealth's version of this matter," which impermissibly vouched for the veracity of the Commonwealth's case and ignored contradictory evidence presented by the defense.

(9) Whether trial counsel was ineffective in failing to object to the trial court's refusal to instruct on its "leniency power" available through voluntary manslaughter.

(10) Whether trial counsel was ineffective by failing to object on the basis of irrelevant rebuttal to the testimony of Philadelphia Police Detective Kenneth Curcio concerning his inability to locate a witness who had previously stated that one of the defense witnesses had originally stated that Williams had killed Gordon Russell.

NIX, Chief Justice, concurring and dissenting.

I join in that portion of the majority's opinion which affirms the defendant's conviction for first degree murder. However, I must dissent to the affirmance of the imposition of the death sentence. I would vacate the death penalty and remand for a new sentencing hearing because of the ineffective assistance of counsel at the penalty phase.

We have set forth the following three part test for proving ineffective assistance of counsel: 1) the issue underlying the claim of ineffectiveness has arguable merit; 2) the course chosen by counsel does not have a reasonable basis designed to serve appellant's interest; and 3) the appellant has suffered prejudice as a result of counsel's ineffectiveness. *Commonwealth v. Chester*, 526 Pa. 578, 609, 587 A.2d 1367, 1382 (1991). In this case, the threshold inquiry is whether the argument that the attorney has failed to raise and the argument he did raise were of arguable merit. There is no question that there was no merit to the attorney's arguing to the jury that the defendant was innocent, particularly because it detracted from the argument that the defendant was under extreme emotional duress at the time of the killing. By making two mutually

exclusive arguments—that he did not commit the murder and that he did commit it while under extreme duress—defense counsel created the real possibility that the jury would accept neither argument. Additionally, the limited argument by counsel regarding the "extreme duress" mitigating factor prejudiced the defendant. The trial court found, in its opinion in support of its denial of post-trial motions, that Erica Higgins had cut Jean Hargrove (who was seven months pregnant with the defendant's child) with a knife and that the defendant was aware that Ms. Hargrove was in danger of suffering a miscarriage as a result of the fight. *Commonwealth v. Williams,* Nos. 2563–66, May Term, 1987, slip op. at 16 (Court of Common Pleas of Philadelphia County, Apr. 25, 1990). These facts should have been stressed at the penalty phase, and should not have been undermined by defense counsel's weak argument that the defendant was innocent of the crime. The argument of defense counsel was ineffective and lacking any merit, there was no reasonable basis for it, and it prejudiced the defendant. Therefore, I would vacate the sentence imposed and remand the case for a new sentencing hearing pursuant to the Death Penalty Statute, 42 Pa.C.S. § 9711(h)(4).