J-S72019-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| TAMMY JORDAN, | : | |
| | : | |
| Appellant | : | No. 476 WDA 2014 |

Appeal from the PCRA Order Entered February 28, 2014,
In the Court of Common Pleas of Erie County,
Criminal Division, at No. CP-25-CR-0002330-2008.

BEFORE:  BENDER, P.J.E., SHOGAN, J., and STRASSBURGER, J.*

MEMORANDUM BY SHOGAN, J.:                    **FILED JANUARY 16, 2015**

Appellant, Tammy Jordan (a/k/a Tam), appeals from the order dismissing his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546.  We affirm.

In a memorandum decision addressing Appellant's direct appeal, we summarized the history of this case as follows:

> In the early morning hours of April 8, 1991, the nude body of twenty three-year-old Sabrina Kowal ("Kowal" or "the victim") was discovered in the middle of a rural road in Erie County. Kowal had sustained extensive trauma to her head and face. She also had numerous abrasions, bruises, and human bite marks on her body. Kowal's death was ruled a homicide, and the police initiated an investigation that continued for seventeen years.
>
> The trial testimony established that, in April 1991, Kowal was a cocaine user and prostitute.  N.T., 7/1/09, at 96.  Kowal was familiar with [Appellant] and his brother, Thomas Jordan

*Retired Senior Judge assigned to the Superior Court.

("Thomas"), as she purchased drugs from them and sometimes saw them at a crack house in Erie (hereinafter, "the crack house"), which was rented by William Knowles ("Knowles") and frequented by numerous drug users. *Id*. at 97, 174-75, 222-24.

Michelle Smith ("Smith") testified that in April 1991, she was a cocaine addict and prostitute and was living in the crack house. *Id*. at 94-95. Smith was familiar with the victim and also purchased drugs from Thomas and [Appellant]. *Id*. at 96-97. According to Smith, Thomas would sometimes carry a rod-like, metal object resembling a cane as a weapon. *Id*. at 98. On the evening of April 6, 1991, Smith was at the crack house in Knowles's bedroom with Thomas and [Appellant]. *Id*. at 105. Thomas and [Appellant] were waiting for the victim to return to the crack house because they believed that she had stolen money and/or drugs from [Appellant]. *Id*. at 101, 105, 227. Upon the victim's return, Thomas grabbed her by the throat and took her into a nearby bedroom; [Appellant] accompanied them. *Id*. at 106. Smith then "heard what sounded . . . like something being bounced off the walls. . . ." *Id*. Smith also heard the victim screaming for help. *Id*. After the screaming had stopped, Smith then heard [Appellant] say to Thomas, "Oh my God, what are we going to do now?" *Id*. at 107. Smith also overheard Thomas say, "she needed to learn a lesson[,]" and "don't nobody [sic] fuck with him." *Id*. at 106. When Thomas exited the bedroom, Smith saw that he had blood on his shirt and jeans. *Id*. at 107. Smith was terrified; she jumped out of an open window and fled the scene. *Id*. at 108.

When Smith returned to the crack house the next day, she noticed that the bedroom in which the incident had occurred no longer had curtains on the window and the rug that had been on the floor was also missing. *Id*. at 109-10. The police interviewed Smith shortly after the victim's body was found. *Id*. at 110. Smith testified that she had initially lied about what she had observed because she was afraid. *Id*. at 110-11. Smith also acknowledged that she had provided false testimony before a grand jury regarding the incident. *Id*. at 111.

Donna Johnson Schreckengost ("Schreckengost") testified that in April 1991, she occupied the bedroom in the crack house in which the assault had allegedly taken place. *Id*. at 170-71,

181. Schreckengost was at the crack house on April 6, 1991, and she had seen the victim, [Appellant], and Thomas there. *Id*. at 176-78. Schreckengost had passed Thomas while he was entering the crack house and noticed that he was carrying a long, metal object. *Id*. at 177-78. Schreckengost exited the crack house, walked a short distance, and then heard a "blood-curdling scream" coming from the residence. *Id*. at 179. Schreckengost was familiar with the victim and recognized that she was the individual who had screamed. *Id*. at 179-80. Schreckengost returned to the crack house the following day. *Id*. at 180. Upon entering her room, Schreckengost noticed that her curtains, bedding, and rug were missing. *Id*. at 181.

Dr. Eric Vey ("Dr. Vey"), a forensic pathologist with the Erie County Coroner's Office, reviewed Kowal's autopsy report as well as photos of the autopsy and photos taken at the rural road where Kowal's body was discovered. *Id*. at 11, 16-17. Dr. Vey stated that the cause of Kowal's death was blunt force trauma to the head. *Id*. at 17. In addition to the above-mentioned injuries, Kowal had several skull fractures and cranial lacerations. *Id*. at 29-30, 46-47. Dr. Vey stated that Kowal did not sustain any other skeletal trauma or any internal organ damage. *Id*. at 45. Based upon these findings, Dr. Vey opined that "[t]he magnitude of trauma here is not consistent with [Kowal] being struck by a motor vehicle." *Id*. at 46.

Pennsylvania State Police Sergeant David Gluth testified that, during the investigation into Kowal's murder, the police had seized several pieces of physical evidence from the crack house. N.T., 7/2/09, at 30. This evidence included pieces of wood and paneling taken from Schreckengost's bedroom, a terry cloth, and a pair of jeans. *Id*. All of these items were found to have blood on them. *Id*. A test performed on the blood revealed that it matched Kowal's blood type. *Id*. at 30-31.

In July 2008, the Commonwealth charged [Appellant] with general criminal homicide and conspiracy to commit homicide.[1] Thomas was also charged with criminal homicide. The matter proceeded to a jury trial, at which [Appellant] and Thomas were tried as co-defendants. At the conclusion of the trial, the jury returned a verdict finding [Appellant] guilty of third-degree murder and conspiracy to commit that crime.[2] The trial court

-3-

later sentenced [Appellant], on the third-degree murder conviction alone, to a prison term of ten to twenty years. Regarding [Appellant's] conviction for conspiracy to commit third-degree murder, the sentencing court entered an Order quashing the conviction, opining that such offense is not a cognizable crime in Pennsylvania.[3]  [Appellant] subsequently filed a post-sentence Motion, arguing, *inter alia*, that the jury's verdict was against the weight of the evidence.  The trial court denied [the post-sentence] Motion.  [Appellant] timely filed a Notice of appeal.

[1] 18 Pa.C.S.A. §§ 2501, 903(a)(2).

[2] The jury also convicted Thomas of third-degree murder.

[3] The Commonwealth did not appeal from this ruling.

**Commonwealth v. Tammy Jordan**, 1722 WDA 2009, 15 A.3d 539 (Pa. Super. filed October 22, 2010) (unpublished memo at 1-5).

This Court affirmed Appellant's judgment of sentence on October 22, 2010, and our Supreme Court denied Appellant's petition for allowance of appeal on April 5, 2011.  **Jordan**, 15 A.3d 539, *appeal denied*, 20 A.3d 485 (Pa. 2011).

On February 16, 2012, Appellant filed the instant PCRA petition.  The PCRA court held an evidentiary hearing on April 3, 2013.  The PCRA court then allowed the parties an opportunity to file briefs.  On March 3, 2014, the PCRA Court dismissed Appellant's PCRA petition.  Appellant filed this timely appeal on March 24, 2014.

Appellant presents the following issue for our review:

> I: DID THE COURT BELOW COMMIT AN ABUSE OF DISCRETION AND REVERSIBLE ERROR BY FAILING TO GRANT DEFENDANT A NEW TRIAL DUE TO INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL?

Appellant's Brief at 1.

Initially, we note appellate briefs must materially conform to the briefing requirements set forth in the Pennsylvania Rules of Appellate Procedure. Pa.R.A.P. Chapter 21. Pursuant to Pa.R.A.P. 2101, when a party's brief fails to conform to the rules of appellate procedure and the defects are substantial, an appellate court may, in its discretion, quash or dismiss the appeal. Rule 2111 provides specific guidelines regarding the content of an appellant's brief. *See* Pa.R.A.P. 2111 (setting forth general contents of appellant's brief). In addition, Rule 2111(a)(11) sets forth the requirement that the appellant include in his brief filed with the Superior Court a copy of the statement of errors complained of on appeal, filed with the lower court pursuant to Rule 1925(b). Pa.R.A.P. 2111(a)(11).

Further, Pa.R.A.P. 2119 provides, in pertinent part, as follows:

> **(a) General rule. The argument shall be divided into as many parts as there are questions to be argued**; and shall have at the head of each part--in distinctive type or in type distinctively displayed--the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent.

Pa.R.A.P. 2119(a) (emphasis added).

Here, we observe that Appellant's brief does not contain a copy of the statement of errors complained of on appeal filed with the PCRA court pursuant to Pa.R.A.P. 1925(b). Also, the argument portion of Appellant's brief is not divided into as many parts as there are questions to be argued because the argument portion is divided into five distinctive parts, yet Appellant lists only one issue in his "statement of the questions presented." Because each of the five points raised by Appellant in the argument portion of his brief essentially addresses the issues raised in the Pa.R.A.P. 1925(b) statement filed by counsel, we will address Appellant's claims.[1] Thus, while these defects in Appellant's brief are significant, they do not preclude our review of this matter. Accordingly, we will overlook the defects and proceed with our review.

Our standard of review of an order denying PCRA relief is whether the record supports the PCRA court's determination and whether the PCRA court's determination is free of legal error. *Commonwealth v. Phillips*, 31 A.3d 317, 319 (Pa. Super. 2011) (citing *Commonwealth v. Berry*, 877

---

[1] We note that the argument portion of Appellant's brief presents the following five points: A. Ineffectiveness for failure to preserve for appeal Cooley/Acosta testimony issue; B. Ineffectiveness relative to a withdrawal of motion to sever; C. Ineffectiveness for withdrawing oral requests for voluntary manslaughter instructions; failure to preserve issue for appeal based upon the court's error in denying the instruction; D. Ineffectiveness for failure to call witnesses essential to defense; E. Ineffectiveness for failure to object to and preserve issues relative to incorrect jury instruction concerning conspiracy to commit third degree murder. Appellant's Brief at 4, 6, 8, 11, 14.

A.2d 479, 482 (Pa. Super. 2005)).  The PCRA court's findings will not be disturbed unless there is no support for them in the certified record.  **Id**. (citing **Commonwealth v. Carr**, 768 A.2d 1164, 1166 (Pa. Super. 2001)).

We observe that all of Appellant's claims challenge the effective assistance of his trial counsel.  In order to succeed on a claim of ineffective assistance of counsel, an appellant must demonstrate (1) that the underlying claim is of arguable merit; (2) that counsel's performance lacked a reasonable basis; and (3) that the ineffectiveness of counsel caused the appellant prejudice.  **Commonwealth v. Pierce**, 786 A.2d 203, 213 (Pa. 2001).

We have explained that trial counsel cannot be deemed ineffective for failing to pursue a meritless claim.  **Commonwealth v. Loner**, 836 A.2d 125, 132 (Pa. Super. 2003) (*en banc*).  Moreover, with regard to the second prong, we have reiterated that trial counsel's approach must be "so unreasonable that no competent lawyer would have chosen it." **Commonwealth v. Ervin**, 766 A.2d 859, 862-863 (Pa. Super. 2000) (quoting **Commonwealth v. Miller**, 431 A.2d 233 (Pa. 1981)).

Our Supreme Court has long defined "reasonableness" as follows:

> Our inquiry ceases and counsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had *some reasonable* basis designed to effectuate his client's interests.  The test is not whether other alternatives were more reasonable, employing a hindsight evaluation of the record.  Although weigh the

alternatives we must, the balance tips in favor of a finding of effective assistance as soon as it is determined that trial counsel's decision had any reasonable basis.

*Commonwealth v. Pierce*, 527 A.2d 973, 975 (Pa. 1987) (quoting *Commonwealth ex rel. Washington v. Maroney*, 235 A.2d 349 (Pa. 1967)) (emphasis in original).

In addition, we are mindful that prejudice requires proof that there is a reasonable probability that, but for counsel's error, the outcome of the proceeding would have been different. *Pierce*, 786 A.2d at 213. "A failure to satisfy any prong of the ineffectiveness test requires rejection of the claim of ineffectiveness." *Commonwealth v. Daniels*, 963 A.2d 409, 419 (Pa. 2009) (citing *Commonwealth v. Sneed*, 899 A.2d 1067 (Pa. 2006)). Thus, when it is clear that a petitioner has failed to meet the prejudice prong of an ineffective assistance of counsel claim, the claim may be disposed of on that basis alone, without a determination of whether the first two prongs have been met. *Commonwealth v. Baker*, 880 A.2d 654, 656 (Pa. Super. 2005).

It is presumed that the petitioner's counsel was effective, unless the petitioner proves otherwise. *Commonwealth v. Williams*, 732 A.2d 1167, 1177 (Pa. 1999). We are bound by the PCRA court's credibility determinations where there is support for them in the record. *Commonwealth v. Battle*, 883 A.2d 641, 648 (Pa. Super. 2005) (citing *Commonwealth v. Abu-Jamal*, 720 A.2d 79 (Pa. 1998)).

Furthermore, claims of ineffective assistance of counsel are not self-proving. ***Commonwealth v. Wharton***, 811 A.2d 978, 986 (Pa. 2002). "[A] post-conviction petitioner must, at a minimum, present argumentation relative to each layer of ineffective assistance, on all three prongs of the ineffectiveness standard…." ***Commonwealth v. D'Amato***, 856 A.2d 806, 812 (Pa. 2004). "[A]n underdeveloped argument, which fails to meaningfully discuss and apply the standard governing the review of ineffectiveness claims, simply does not satisfy Appellant's burden of establishing that he is entitled to relief." ***Commonwealth v. Bracey***, 795 A.2d 935, 940 n.4 (Pa. 2001).

Appellant first presents an argument that trial counsel was ineffective for failing to preserve for direct appeal an issue pertaining to the testimony offered by Mr. John Cooley, which was stricken from the record, but was then supported by the testimony of Ms. Rose Acosta.[2] Appellant's Brief at 4. It appears Appellant is asserting that trial counsel was ineffective for failing to argue on direct appeal that the trial court erred in admitting the testimony of Ms. Rose Acosta. After the trial court struck Mr. Cooley's

---

[2] We note that during Appellant's trial, Mr. Cooley indicated that he loaned a Ford Bronco to the Jordan brothers. However, it later became evident that Mr. Cooley loaned the Ford Bronco to a different person with the last name of Jordan. Appellant's counsel objected to Mr. Cooley's testimony. The trial court then struck Mr. Cooley's testimony and offered a cautionary instruction to the jury directing it to disregard the testimony, as there was no evidence linking the vehicle to Appellant.

testimony pertaining to loaning a Ford Bronco to Appellant, and Appellant's brother testified, the Commonwealth called Ms. Acosta as a witness. Ms. Acosta testified that she observed a body in the road where the victim was found, and that she also observed a Ford Bronco in the same vicinity. Although Appellant's counsel objected to Ms. Acosta's testimony, the trial court refused to instruct the jury again pertaining to the lack of a connection between the Jordan brothers and the Ford Bronco. Defense counsel did not present the issue pertaining to Ms. Acosta's testimony to this Court on direct appeal.

In addressing a similar issue in the appeal from the denial of Appellant's brother's PCRA appeal, this Court offered the following analysis, which we find to be dispositive:

> In his final issue, [Tommy Jordan] avers that trial counsel was ineffective for failing to ensure that testimony of two Commonwealth witnesses was either limited in scope or struck from the record. Specifically, [Tommy Jordan] argues that "defense counsel was ineffective for failing to proffer objections to the retention or permissibility of the testimony of Sergeant David Gluth and witness Rose Acosta in regard to a Ford Bronco and preserve those claims for purposes of appellate review." [Tommy Jordan's] Brief at 21.
>
> Generally, to prevail on a claim of ineffective assistance of counsel under the PCRA, a petitioner must plead and prove by a preponderance of the evidence that counsel's ineffectiveness "so undermined the truth determining process that no reliable adjudication of guilt or innocence could have taken place." [**Commonwealth v. Spotz**, 18 A.3d 244, 259 (Pa. 2011)].
>
> * * *

In the instant case, the record reflects that Sergeant Gluth testified that Commonwealth witness John Cooley was a registered owner of a Ford Bronco. N.T., 7/2/09, at 127. Cooley subsequently gave improper and irrelevant testimony, which implied that Appellant had access to Cooley's Ford Bronco around the time of the murder. *Id*. at 138. Cooley's testimony was struck from the record following defense counsel's objection. *Id*. at 142-144. The trial court then immediately gave the following cautionary instruction[:]

> Court: Ladies and gentlemen of the jury, there's been a request to strike the testimony of John Cooley. And I'm going to grant that request. Mr. Cooley testified he lent his vehicle to someone named Jordan, but there's no evidence linking that vehicle to [Tommy Jordan]. Such testimony is nothing more than speculation or guesswork which you may not do. I'm striking the testimony and I'm telling you to disregard.

*Id*. 144-145. Following the cautionary instruction, Commonwealth witness Acosta testified to observing a Bronco in the area where the victim's body was discovered. *Id*. at 152.

We agree with the PCRA court's conclusion that the prejudicial nature of the testimony of Gluth and Acosta was cured by the trial court's immediate cautionary instruction. PCRA Court's Notice of Intent to Dismiss PCRA, 3/13/12, at 5. "The jury is presumed to have followed the court's instructions." *Commonwealth v. Flor*, 998 A.2d 606, 632 (Pa. 2010), *cert denied*, *Flor v. Pennsylvania*, 131 S. Ct. 2102 (2011). As there is nothing in the record to rebut the foregoing presumption, Appellant has failed to demonstrate prejudice. Accordingly, the PCRA court properly concluded that this issue is without merit.

*Commonwealth v. Tommy Jordan*, 749 WDA 2012, 64 A.3d 36 (Pa. Super. filed December 27, 2012) (unpublished memo at 8-10). For the same reasons, we conclude that Appellant has failed to establish ineffective

assistance of trial counsel with regard to Ms. Acosta's testimony pertaining to observing a Ford Bronco.

For the sake of argument, if we were to assume that there is merit to Appellant's underlying claim of ineffective assistance with regard to Ms. Acosta's testimony, and that trial counsel lacked an appropriate strategy in this regard, we would still conclude that the claim fails because Appellant has not established the necessary prejudice. As we previously stated, prejudice requires proof that there is a reasonable probability that, but for counsel's error, the outcome of the proceeding would have been different. *Pierce*, 786 A.2d at 213. "A failure to satisfy any prong of the ineffectiveness test requires rejection of the claim of ineffectiveness." *Daniels*, 963 A.2d at 419. Accordingly, when it is clear that an appellant has failed to meet the prejudice prong of an ineffective assistance of counsel claim, the claim may be found to lack merit on that basis alone. *Baker*, 880 A.2d at 656.

Appellant presented no argument concerning whether he suffered prejudice as a result of counsel's inaction such that there is a reasonable probability that, but for counsel's error, the outcome of the proceeding would have been different. Rather, Appellant simply presents the following conclusory statement pertaining to prejudice:

> It is argued that the [trial court] allowing [Ms. Acosta's] testimony to be presented to the jury, particularly in light of the

> fact that it had just stricken the testimony of Mr. Cooley, resulted in prejudice to [Appellant] which was further compounded by the fact that the [trial court] did not grant a requested instruction to the jury to either view this testimony with caution, or to indicate to the jury that there had not been shown a connection between [Appellant] and the vehicle that was testified to.

Appellant's Brief at 5.

Again, claims of ineffective assistance of counsel are not self-proving. *Wharton*, 811 A.2d at 986. Accordingly, we must conclude that Appellant has failed to establish his claim that trial counsel was ineffective in this regard. Thus, Appellant's first claim fails.

Appellant next argues that his trial counsel was ineffective for advising Appellant to withdraw his pretrial motion to sever the trial from that of his co-defendant/brother. Appellant's Brief at 6-8. Appellant contends that he acquiesced to trial counsel's advice to withdraw the motion to sever. However, as we previously stated, we are bound by the PCRA court's credibility determinations where there is support for them in the record. *Battle*, 883 A.2d at 648.

Here, our review of the certified record reflects that trial counsel presented a pretrial motion to sever on Appellant's behalf. Omnibus Pretrial Motion, 2/11/09, at 1-2. The motion to sever was subsequently withdrawn on March 5, 2009. The record further reveals that, at the PCRA hearing, Appellant testified that, after consultation with trial counsel, Appellant

agreed to withdraw the motion. N.T., 4/3/13, at 54-56. However, trial counsel testified at the PCRA hearing that the motion to sever was withdrawn solely based upon Appellant's desires, and that the motion to sever was withdrawn against trial counsel's advice. *Id*. at 70-71. Moreover, the PCRA court specifically found the testimony of trial counsel to be credible and the testimony of Appellant not to be credible. PCRA Court Opinion, 2/28/14, at 8. Accordingly, we decline Appellant's invitation to reweigh the credibility determination of the PCRA court in this regard. Therefore, we conclude that Appellant's claim of ineffective assistance of trial counsel in handling his motion to sever fails.

In his third issue, Appellant argues that his trial counsel was ineffective with regard to his request for a jury instruction on voluntary manslaughter. Appellant's Brief at 8-10. Appellant contends that trial counsel was ineffective for withdrawing a request for the manslaughter instruction and also, that counsel was ineffective on direct appeal for failing to challenge the trial court's refusal to give the manslaughter instruction.

In reviewing this claim, we are mindful that our Supreme Court recently reiterated the longstanding position that "no jury charge is required on the elements of voluntary manslaughter where the defendant denies having committed the killing." *Commonwealth v. Sanchez*, 82 A.3d 943, 980 (Pa. 2013). Such was the circumstance in this case.

In addressing this claim of ineffective assistance, the PCRA court

offered the following discussion:

With regard to the claim that [trial counsel] was ineffective for withdrawing his oral requests for [a] voluntary manslaughter instruction and failing to preserve the issue for appeal, this Court finds [Appellant's] argument to be without merit. At the end of the trial, counsel for [Appellant's] brother requested a voluntary manslaughter charge and [Appellant's trial counsel] joined in the request. Trial Tr., July 6, 2009 at 6:14-9:22. During this discussion, the Court stated that it believed there was no basis for such a charge and there was no evidence to satisfy the elements of voluntary manslaughter. *Id*. at 6:15-7:16. However, this Court further stated that it would consider a voluntary manslaughter charge if defense counsel submitted one in writing. *Id*. at 8. Thereafter, [Appellant's counsel] withdrew his request for the manslaughter charge.

This Court notes that because the evidence of record did not support a voluntary manslaughter charge, it was highly unlikely that it would have changed its position and allowed the charge. This Court accepts proposed charges for consideration from the attorneys in every trial, however, only appropriate charges are given to the jury. **This Court further notes that it was the defense's position that [Appellant] and his brother were innocent of the killing. This Court agrees with the Commonwealth's argument that a request for an instruction on voluntary manslaughter would have contradicted their defense.** Therefore, not only would a manslaughter charge have been inappropriate, but it was a reasonable strategic decision for [Appellant's counsel] to withdraw his request for the voluntary manslaughter charge. Accordingly, this Court finds that [Appellant's counsel] was not ineffective for withdrawing his request.

PCRA Court Opinion, 2/28/14, at 10-11 (emphasis added). We are

constrained to agree with the PCRA court that, given the fact that Appellant

denied having committed the killing, a charge on voluntary manslaughter

would not have been given by the trial court. Therefore, Appellant's claim of trial counsel's ineffective assistance based upon withdrawal of the request for the jury charge and failure to raise the jury charge issue on appeal fails.

In his fourth issue, Appellant argues that trial counsel was ineffective for failure to call various witnesses. Specifically, Appellant contends that trial counsel should have called Karen Ormsby, Michelle Lowery Cool, Sandy Aiken (Harvey), and Mr. and Mrs. Linebach. Appellant's Brief at 11-14.

To prevail on a claim of trial counsel's ineffectiveness for failure to call a witness, an appellant must prove: "(1) the witness existed; (2) the witness was available; (3) trial counsel was informed of the existence of the witness or should have known of the witness's existence; (4) the witness was prepared to cooperate and would have testified on appellant's behalf; and (5) the absence of the testimony prejudiced appellant." *Commonwealth v. Chmiel*, 889 A.2d 501, 545-546 (Pa. 2005) (citations omitted). Trial counsel's failure to call a particular witness does not constitute ineffective assistance without some showing that the absent witness's testimony would have been beneficial or helpful in establishing the asserted defense. *Id*. Appellant must demonstrate how the testimony of the uncalled witness would have been beneficial under the circumstances of the case. *Id*.

In addressing Appellant's claim of ineffective assistance of counsel for failure to call witnesses, the PCRA court presented the following thorough analysis after the completion of its PCRA hearing:

> With regard to Karen Ormsby[3] and Michelle Lowery Cool, [trial counsel] explained that each witness' testimony was dependent upon the other's. When faced with having a sheriff go to the hospital and compel Ms. Ormsby's presence at trial, [trial counsel] testified that he and [Appellant] agreed that they were confident in their presentation of the defense and elected not to call her. The [PCRA court] finds [trial counsel's] testimony to be credible, and thus, [trial counsel's] decision not to call Ms. Ormsby was a reasonable strategic decision. It follows that since Michelle Lowery Cool's testimony was dependent upon Ms. Ormsby's testimony, [trial counsel] was not ineffective for failing to call either of these witnesses.
>
> With regard to Sandra Aiken, . . . she provided testimony and statements to police back in the 1990's with regard to the events leading up to the victim's death. These prior statements were inconsistent with the defense, and had she testified, the statements would have been used to impeach her credibility. Moreover, because her prior testimony was made under oath, the grand jury testimony would also have been admitted as substantive evidence. *See* Pa.R.Evid. 803.1(1). Because Ms. Aiken's testimony would have been more favorable to the Commonwealth's case, [trial counsel] made a reasonable decision in choosing not to call her as a witness. Accordingly, [the PCRA court] finds [trial counsel] was not ineffective for failing to call her as a witness at trial.
>
> With regard to Mr. and Mrs. Linebach, [the PCRA court] finds that [Appellant] has failed to meet his burden of proof to demonstrate that the [Linebachs] would have been available for

---

[3] Trial counsel explained that Ms. Ormsby had been subpoenaed, but she contacted trial counsel the morning she was to testify and notified him that she had been hospitalized. N.T., 4/3/13, at 79. The trial court offered to recess the trial and send a sheriff to the hospital to get the witness. *Id*. at 80.

trial. According to their Affidavits, the [Linebachs] aver that around the date of the victim's death, they lived about eight miles away [from the discovered corpse] on Sharp Road. On the day the victims' body was found, the [Linebachs] discovered a man sleeping in their car. This man told them he had driven his truck into a ditch and was looking for help when he decided to sleep in their vehicle. Mr. Linebach averred that the man "reeked of alcohol" and gave the man a [ride] to the closest service station. Mrs. Linebach averred that she did see the man's truck stuck in a ditch on their road. [Appellant] argues that the [Linebachs'] testimony would have convinced the jury that [this] man was the victim's killer. First, [the PCRA court] is of the opinion that it is unlikely that the [Linebachs'] testimony would have changed the outcome of this case, because it is pure speculation. Second [the PCRA court] finds that [Appellant] has failed to demonstrate that the [Linebachs] would have been available to testify at the time of trial. It is [Appellant's] burden to demonstrate all of the elements regarding ineffective assistance of counsel for failing to call a proposed witness, and there is no evidence that the [Linebachs], who were Virginia residents [at the time of trial], would have been available. Accordingly, [the PCRA court] finds [Appellant has failed to demonstrate [trial counsel] was ineffective in failing to call the [Linebachs].

PCRA Court Opinion, 2/28/14, at 11-13. It is our determination that the PCRA court's decision is accurately explained in its opinion, and we affirm this issue on the basis of that decision.

In his final issue, Appellant argues that trial counsel was ineffective regarding the trial court's jury instruction pertaining to conspiracy. Specifically, Appellant claims that trial counsel was ineffective for failing to object to and preserve issues relating to a jury instruction concerning conspiracy to commit third degree murder. Appellant asserts that because

there is no crime of conspiracy to commit third degree murder, the jury charge was erroneous. Appellant's Brief at 14-20.

Upon review of the record, we conclude that there is no merit to the underlying claim. As the PCRA court correctly observes, "[w]ith regard to the claim that [trial counsel] was ineffective for failing to object to and preserve issues relative to the incorrect jury instruction on conspiracy to commit third degree murder, [the PCRA court] finds [Appellant's] argument to be without merit. As summarized above, [trial counsel] made no objection to such a charge because none was specifically given – [the PCRA court] charged on conspiracy generally. Trial Tr., July 6, 2009 at 9:4-10:12; 141:23-156:21." PCRA Court Opinion, 2/28/14, at 13.

Indeed, our thorough review of the record reflects that the trial court did not charge the jury on the crime of criminal conspiracy to commit third degree murder. Rather, as the PCRA court accurately notes, the trial court presented the jury with a general charge of conspiracy. N.T., 7/6/09, at 153-156. Nowhere in the charge at issue did the trial court mention that there could be a conspiracy to commit third degree murder. Accordingly, Appellant's claim that trial counsel was ineffective for failing to object to the trial court's jury instruction on conspiracy lacks merit.

Moreover, to the extent that Appellant argues the cumulative effect of the errors alleged herein denied him a fair trial, we observe that our

Supreme Court has repeatedly stated that "no number of failed claims may collectively attain merit if they could not do so individually." ***Commonwealth v. Lopez***, 854 A.2d 465, 471 (Pa. 2004) (quoting ***Commonwealth v. Williams***, 615 A.2d 716, 722 (Pa. 1992)). Because we have held that there were no errors warranting relief, Appellant's allegation of cumulative error fails.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/16/2015