J-A27027-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RASHON SARGENT | : | |
| | : | |
| Appellant | : | No. 816 EDA 2020 |

Appeal from the Judgment of Sentence Entered January 5, 2016
In the Court of Common Pleas of Delaware County Criminal Division at
No(s):  CP-23-CR-0004565-2015

BEFORE:   STABILE, J., NICHOLS, J., and COLINS, J.[*]

MEMORANDUM BY NICHOLS, J.:            **FILED SEPTEMBER 13, 2021**

Appellant Rashon Sargent appeals *nunc pro tunc* from the judgment of

sentence imposed after a jury found Appellant guilty of first-degree murder

and possessing an instrument of crime.[1]  Appellant claims that the trial court

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 2502(a) and 907, respectively.

This Court previously remanded this matter for clarification of whether the order giving rise to this appeal reinstated Appellant's right to appeal from the judgment of sentence or the dismissal of Appellant's first Post-Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546, petition.  In response, the PCRA court filed a supplemental opinion stating that it reinstated Appellant's direct appeal rights.  **See** Suppl. Trial Ct. Op., 5/21/21, at 4.  The parties also entered into a written stipulation confirming the PCRA court's reinstatement of Appellant's direct appeal rights, and the court attached the parties' signed stipulation to its opinion.  **Id.** & Attach. B.  Accordingly, we have amended the caption to indicate that Appellant takes this appeal from the judgment of sentence entered January 5, 2016.

erred in (1) overruling his **Batson**[2] objection, (2) denying his motion to suppress his statements while in police custody, and (3) precluding evidence of the decedent's prior criminal history. We affirm on the basis of the trial court's opinion.

The trial court summarized the factual background to this appeal as follows:

> [O]n May 8, 2015[, Appellant, who was seventeen years old at the time,] waited outside the home of . . . Dolan Alsop. At the time of his death Alsop was sixty years old, had the use of only his right arm and he walked with the assistance of a cane. Mr. Alsop entered the hallway to his residence from the front porch. Carrying a shotgun[, Appellant] approached and followed Mr. Alsop into the interior hall. In the hallway[, Appellant] shot Mr. Alsop from an estimated distance of two to eight feet. [Appellant] took Mr. Alsop's cell phone and fled, leaving the dying man. During his flight[, Appellant] disposed of a box of ammunition in a sewer opening. Mr. Alsop was pronounced dead at the scene.

Trial Ct. Op. 5/21/20, at 1-2.

On November 19, 2015, the jury found Appellant guilty of first-degree murder and possessing an instrument of crime. On January 5, 2016, the trial court sentenced Appellant to an aggregate term of thirty-six-and-one-half years to life imprisonment. Appellant did not file post-sentence motions or a direct appeal.

As noted above, the PCRA court reinstated Appellant's direct appeal rights on May 21, 2021. Appellant timely filed a notice of appeal and a court-ordered Pa.R.A.P. 1925(b) statement.

---

[2] **Batson v. Kentucky**, 476 U.S. 79 (1986).

Appellant raises the following issues for our review:

1. Was the trial court in error for denying [Appellant]'s **Batson** challenge raised during jury selection?

2. Was the trial court in error for denying the pretrial motion as to the suppression of the statement made by [Appellant] while in police custody on May 14, 2015?

3. Was the trial court in error for denying [Appellant]'s motion to introduce at the time of trial evidence of [decedent]'s prior criminal history?

Appellant's Brief at 4.[3]

We have reviewed the trial court's opinion, the parties' arguments, and the record, and we conclude that Appellant's issues are meritless. First, we agree with the trial court even if Appellant established a *prima facie* **Batson** claim, the Commonwealth provided a race-neutral explanation for striking the prospective juror. **See** Trial Ct. Op. at 5. Second, Appellant fails to establish an error in the trial court's conclusion that Appellant's statement to police was voluntary. **See id.** at 7-9. Third, we discern no abuse of discretion in the trial court's ruling to preclude the evidence of the decedent's 1973 and 1979 convictions as being too remote in time to the 2015 killing of the decedent.

_____

[3] Appellant's Rule 1925(b) statement raised five issues. However, on appeal, Appellant abandoned two of the issues stated in his Rule 1925(b) statement—one concerning the denial of Appellant's motion to exclude evidence of his prior conviction, the other concerning the Commonwealth's admission of autopsy photographs into evidence. **See** Pa.R.A.P. 2116, 2119(a); **Commonwealth v. Heggins**, 809 A.2d 908, 912 n.2 (Pa. Super. 2002) (noting that "an issue identified on appeal but not developed in the appellant's brief is abandoned and, therefore, waived" (citation omitted)).

***See id.*** at 11-12.  For these reasons, we conclude that the trial court properly addressed Appellant's claims on appeal and affirm based on the trial court's opinion.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/13/2021

# IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PENNSYLVANIA
## CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA    :    CP-23-CR-4565-2015

          : 

         vs.               : 

          : 

    RASHON SARGENT        : 

          : 

**A. Sheldon Kovach, Esquire, on behalf of the Commonwealth**
**Scott D. Galloway, Esquire, on behalf of the Defendant**

## O P I N I O N

Bradley, J.                  **FILED:** *May 21, 2020*

The Defendant, Rashon Sargent, was sentenced to an aggregate sentence of 438 months to Life after a jury found him guilty of First Degree Murder[1] and possessing an instrument of crime.[2] The evidence presented at trial proved beyond a reasonable doubt that on May 8, 2015 Defendant waited outside the home of the Victim, Dolan Alsop. At the time of his death Alsop was sixty years old, had the use of only his right arm and he walked with the assistance of a cane. Mr. Alsop entered the hallway to his residence from the front porch. Carrying a shotgun Defendant approached and followed Mr. Alsop into the interior hall. In the hallway Defendant shot Mr. Alsop from an estimated distance of two to eight feet. Defendant took Mr. Alsop's cell phone and fled, leaving the dying man. During his flight

---

[1] 18 Pa.C.S.A. 2502(A)
[2] 18 Pa.C.S.A. 907(A)

1

the Defendant disposed of a box of ammunition in a sewer opening. Mr. Alsop was pronounced dead at the scene.

On February 6, 2020 Defendant was granted post-conviction relief which allowed him to file this direct appeal *nunc pro tunc*. The parties stipulated that prior counsel, who had filed a PCRA petition on Defendant's behalf, was ineffective during the course of his representation. Defendant was directed to file a Concise Statement of Errors Complained of on Appeal. Defendant has complied with the Court's Order and has identified the following claims of trial court error for review:

1) The Trial Court erred by denying Defendant's *Batson* challenge;
2) The Trial Court erred by failing to grant Defendant's pre-trial motion to suppress his statement;
3) The Trial Court erroneously failed to grant Defendant's *motion in limine* wherein he sought to introduce evidence of the Victim's prior criminal history;
4) The Trial Court erred when it denied the Defendant's motion to exclude evidence of a prior juvenile adjudication for theft from a motor vehicle;
5) The Trial Court erred by allowing inflammatory autopsy photographs, specifically photographs #2 and #3, into evidence.

## Facts

The Commonwealth's evidence proved far beyond a reasonable doubt that Defendant shot and killed Mr. Alsop. Video surveillance recordings obtained from nearby residences and a church captured the Defendant as he hid from Mr. Alsop's view as the Victim approached his home. The Defendant removed a shotgun from a case and watched as Mr. Alsop unlocked the front door. Defendant then went up to the residence, onto the front porch and

followed Mr. Alsop inside. Inside Defendant killed Mr. Alsop with a single slug shot from a Winchester Super X 12 gage shotgun.[3]

At trial Defendant testified and based on his testimony raised "imperfect self-defense" in an attempt to obtain the "reduced" verdict of guilty to voluntary manslaughter. Evidence from the Medical Examiner suggested that, based on the autopsy and photos of the Victim at the crime scene Mr. Alsop raised his left arm to a defensive position when he was shot. This testimony suggested that Mr. Alsop knew that he was about to be shot before the fatal slug was fired. Defendant contradicted a statement that he gave to law enforcement on May 14, 2015 and testified that he never intended to rob Mr. Alsop, that he only went to see him because he wanted to make amends with the Victim for past confrontations in which Mr. Alsop threatened the Defendant. He testified that thought that Mr. Alsop was pulling a gun from his pocket and he shot him. No weapons were found near Mr. Alsop's body and Defendant admitted that in prior interactions with Mr. Alsop he never saw him in possession of a weapon of any kind, including a gun or a knife.

<u>Batson Challenge.</u>

Jury selection in this matter took place on November 16, 2015. After the jury pool was reduced through strikes for cause the prosecutor and trial counsel exercised their preemptory challenges. <u>See</u> N.T. 11/16/15 p. 26. At the conclusion of the process trial counsel raised a

---

[3] A search warrant was executed at Defendant's aunt's home shortly after the murder. The sweatshirt Defendant was wearing in the videotape was seized. Blood on the shirt was submitted for DNA testing and it proved to be a match with Mr. Alsop's DNA profile. Defendant admitted to his cousin that he shot and killed Mr. Alsop but described it as an accident. Defendant was interviewed by law enforcement six days after the killing and admitted that he shot and killed Mr. Alsop. He claimed that at the time, he intended only to rob the victim and that the gun went off accidently after he had gone through Mr. Alsop's pockets.
By all accounts, Mr. Alsop was a sixty-year-old man who was known in his neighborhood as a drug user and who had a crippled left arm with a minimal range of motion and minimal strength.

3

*Batson* challenge based solely on the fact that in exercising his preemptory challenges the prosecutor chose to strike Juror Number 30, the only black juror among the remaining prospects. When called upon to explain his reason for striking the juror, the prosecutor explained: "30 put on reason why you can't be a fair juror, my husband is still getting locked up for a DUI and is in the criminal justice system. Someone helped her with her sheet. It just seems like she had some issues with the criminal justice system if her husband was going through it." N.T. 11/16/15 p. 27. The Court found this explanation acceptable and noted that both the Defendant and the Victim in this case were black. Id. The jury was seated without further objection.

In Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the United States Supreme Court held that the Federal Constitution's Equal Protection Clause prohibits a prosecutor from challenging potential jurors solely on the basis of race. In Commonwealth v. Edwards, 177 A.3d 963 (Pa. Super, 2018) the Pennsylvania Superior Court explained:

> When a defendant makes a *Batson* challenge during jury selection: (1) the defendant must make a *prima facie* showing that the circumstances give rise to an inference that the prosecutor struck one or more prospective jurors on account of race; (2) if the *prima facie* showing is made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the jurors at issue; and (3) the trial court must then make the ultimate determination of whether the defense has carried its burden of proving purposeful discrimination.

Id. at 971 *quoting* Commonwealth v. Watkins, 108 A.3d 692, 708 (Pa. 2014).

The record in this case refutes Defendant's claim that the prosecutor engaged in purposeful discrimination based on race. At the outset we note that Defendant failed to make

4

a *prima facie* showing that the circumstances gave rise to an inference that Juror #30 was struck on account of her race. The fact that this juror appears to have been the only African American in the panel makes it impossible for the Defendant to demonstrate discriminatory intent through a pattern of preemptory strikes. However, even if this single juror was excluded because of her race Defendant's claim would have merit. To establish a *prima facie* case of purposeful discrimination a defendant "must show that he is a member of a cognizable racial group, that the prosecutor exercised a peremptory challenge or challenges to remove from the venire members of the defendant's race; and that other relevant circumstances combine to raise an inference that the prosecutor removed the juror(s) for racial reasons." Commonwealth v. Cook, 952 A.2d 594, 602 (Pa. 2008). In this case the record is completely devoid of any evidence that suggests that the prosecutor engaged in any questioning or behavior that would indicate discriminatory intent. See Commonwealth v. Roney, 79 A.3d 595, 619 (Pa. 2013) (*citing* Commonwealth v. Spotz, 896 A.2d 1191, 1213–1214 (in evaluating a *Batson* claim alleging gender discrimination, a court may look to whether the prosecutor made any questionable remarks during jury selection).

In an abundance of caution however, the Court directed the prosecutor to state his reasons for striking Juror #30. Referring to the Juror #30's completed questionnaire, the prosecutor explained that the Juror indicated that the fact that her husband was "going through" the criminal justice system could prevent her from being fair and impartial and that another person helped her complete the questionnaire were the reasons for the strike. This explanation satisfied the Court that the strike was for race-neutral reasons. Finally, from the circumstances that existed, including the relevant fact that both the Victim and the

5

Defendant were African American and therefore this case was not racially sensitive, see Commonwealth v. Roney, supra, the Court appropriately concluded that the Defendant had not met his burden of proving purposeful discrimination. See also Commonwealth v. Ligons, 971 A.2d 1125, 1142 (Pa. 2009)

<u>Motion to Suppress Defendant's Statement</u>

Defendant was arrested in Philadelphia on the evening of May 13, 2015. He was immediately transported to the Darby Borough Police Headquarters where he was advised of his *Miranda* rights in the presence of his aunt, Teyone Sargent. Defendant executed a waiver of rights at about 2:23 a.m. and gave a brief statement which was recorded. The interview concluded at 2:24 a.m. See Exhibit CS-2 and Exbibit C-29. In a pre-trial motion Defendant challenged the voluntariness of the Defendant's waiver of rights. A hearing was convened and at the conclusion the Court found that, given the totality of the circumstances that existed when the statement was given, Defendant voluntarily waived his right to remain silent and the statement was voluntarily given. N.T. 10/22/15 p. 41.

"[I]f a suspect makes a statement during custodial interrogation, the burden is on the Government to show, as a prerequisite to the statement's admissibility in the Government's case in chief, that the defendant voluntarily, knowingly and intelligently waived his rights." In re B.T., 82 A.3d 431, 436 (Pa. Super. 2013). In In re V.C., 66 A.3d 341, 351 (Pa. Super. 2013) the Superior Court explained that this inquiry has two distinct dimensions: "First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception. Second, the waiver must have been made with a full awareness both of the nature of the right being

6

abandoned and the consequences of the decision to abandon it. Only if the "totality of the circumstances surrounding the interrogation" reveals both an uncoerced choice and the requisite level of comprehension may a court properly conclude that *Miranda* rights have been waived." Defendant did not suggest that his waiver was not knowing or intelligent but challenged only the voluntariness of the statement, focusing on the fact that the interested adult in attendance, an aunt who raised him, was not his current legal guardian. Given the fact that there is no *per se* requirement that an interested adult be present during a police interview, see id. at 351, the suggestion that only the presence of a legal guardian can ensure voluntariness is meritless. Rather, the totality of the circumstances, including the juvenile's age, experience, comprehension, the presence or absence of an interested adult, the duration and means of the interrogation, the defendant's physical and psychological state, the conditions attending his detention, the attitude of the interrogator and "any and all other factors that could drain a person's ability to withstand suggestion and coercion" are all circumstances that must be considered." Id. See also In the Interest of N.M., 222 A.3d 759 (Pa. Super. 2019)(absence of interested adult did not invalidate waiver of *Miranda* rights where juvenile was twenty-four days short of his eighteenth birthday; his mother was contacted and made clear that she would not attend interview, gave officers permission for the interview to proceed and rejected offer to speak with her son).

On May 13, 2015 at about 10:30 or 11:00 p.m. a search warrant was executed at the residence of Teyone Sargent. N.T. 10/22/15 pp. 79, 28-29. Ms. Sargent arrived as the residence was being searched and she agreed to speak with Detective Corporal Brian Pitts of the Darby Borough Police Department following the search. Id. Ms. Sargent told Detective

7

Pitts that she had raised the Defendant from the time he was a child. Detective Pitts knew that Defendant's mother was incarcerated. Ms. Sargent did not know the whereabouts of the Defendant's father. See id. Ms. Sargent told Detective Pitts that she had spoken to the Defendant twice and exchanged text messages with him after Mr. Alsop was killed. She shared the text messages with Detective Pitts at her residence and agreed to speak with the detective further at Police Headquarters. Id. at 9, 31. After the search she was transported to Darby Borough Police Headquarters.

Defendant was arrested in Philadelphia at about 1:30 a.m. on May 14, 2015. At the time of his arrest he was seventeen years and ten months old and had four prior juvenile adjudications. He was immediately transported to Darby Borough Headquarters. Id. at pp. 8-9, 39-40. Within twenty minutes of Defendant's arrival Detective Pitts and Lieutenant Richardt Gibney advised him that that they were investigating Mr. Alsop's killing. Defendant was brought to an interview room where Ms. Sargent was waiting. Id. at 12-15. The room was small and contained a table and a few chairs. Detective Pitts, Lieutenant Gibney and Ms. Sargent were in the room. The officers were dressed in plain clothes- jeans and t-shirts – and their firearms were not visible. Defendant was calm, and his aunt stayed in the room the entire time.

Detective Pitts advised the Defendant of his *Miranda* rights, reading an Advice of Rights Form aloud in the presence of Ms. Sargent. After reading each paragraph advising the Defendant of his right to remain silent, his right to an attorney during questioning at no cost to him and his right to stop questioning at any time Detective Pitts asked the Defendant if he understood each of these rights. Each time Defendant responded verbally that he did.

Detective Pitts wrote "yes" on the form each time. Defendant acknowledged his rights and executed the waiver that is set forth at the bottom of the form. Detective Pitts handed the form to the Defendant and asked him to read it. Defendant read the form, initialed each of his responses and affixed his signature. Detective Pitts handed the form to Ms. Sargent and she read and signed the form. Id. at 16-23. The interview followed immediately and concluded about twenty minutes later. Detective Pitts testified credibly that the Defendant remained calm throughout the interview. Neither Detective Pitts nor Lieutenant Gibney raised their voices. No promises or threats were made. There was no physical contact. Defendant did not appear to be under the influence of drugs or alcohol, his responses were appropriate and it appeared that he understood the detectives' questions. At no time did he ask for a lawyer and he never suggested that he wished to end questioning and remain silent. Id. at 22-23.

All of the foregoing support the conclusion that in the presence of his aunt, Defendant made a free and deliberate choice to waive his rights and to participate in questioning. He was two months short of his eighteenth birthday and had prior experience in the criminal justice system that resulted in four juvenile adjudications. There is no evidence suggesting that the detectives engaged in any behavior that could tend to intimidate, coerce or deceive. Defendant's entire interaction with police authorities, from the time of his arrest to the conclusion of the interview, spanned about an hour and fifteen minutes. The waiver and the interview that followed took twenty minutes. The Commonwealth met its burden of proving the voluntariness of the statement and therefore the Court's determination as to its admissibility was not erroneous. Compare, In re T.B., 11 A.3d 500 (Pa. Super. 2010) (fifteen

9

year-old juvenile's waiver of his *Miranda* rights in delinquency proceeding was not intelligently and knowingly entered, where statement was taken with no interested adult in attendance, his I.Q. was sixty-seven and he could read only at third grade level despite being of high school age; juvenile's mother was not informed of juvenile's right to remain silent or right to attorney, when she authorized the police to speak to him after his arrest).

Motion in Limine- Victim's Criminal Record

In a pre-trial *motion in limine* Defendant sought a ruling to allow the admission of the Victim's prior convictions for *inter alia* robbery, aggravated and simple assault, possessing an instrument of crime and terroristic threats. The convictions in question occurred between 1973 and 1979. N.T. 10/22/15 p. 42-43. Defendant argued that the Victim's character or propensity for violence was relevant to a defense that would suggest that the Victim was in fact the aggressor in the incident that resulted in his death[4]. Trial counsel argued that, if Defendant sought to raise self-defense at trial these approximately thirty-six year-old convictions would be relevant. Trial counsel did not suggest that the Defendant was aware of these convictions at the time of the killing. In fact, he represented that he did not know whether the Defendant knew of the convictions. Inexplicably, counsel argued that this lack of knowledge was grounds for the admission of this evidence. In response the prosecutor argued that these convictions were too remote in time to be relevant and that, given the evidence that was shared in Discovery, the Defendant's suggestion that self-defense would be at issue in this matter was disingenuous. The Court agreed and ruled that evidence of the Victim's prior convictions would be irrelevant and inadmissible at trial.

---

[4] It was agreed that prior convictions for drug violations were irrelevant and therefore inadmissible at trial.

10

"Relevant evidence is that which has any tendency to make a fact more or less probable than it would be without the evidence[,] and the fact is of consequence in determining the action." Commonwealth v. Gill, 206 A.3d 459, 464 (Pa. 2019) (quoting Pa.R.E. 401(a) & (b). Pursuant to Pennsylvania Rule of Evidence 402, General Admissibility of Relevant Evidence, all relevant evidence is admissible and irrelevant evidence is inadmissible. Determinations regarding the admissibility of evidence rest within the sound discretion of the trial court. See Gill, supra.

Where self-defense is properly raised when murder is charged, evidence of prior convictions which demonstrate the victim's propensity toward violence may be admitted to prove that the victim was in fact the aggressor. See Commonwealth v. Amos, 284 A.2d 748, 750–51 (Pa. 1971). However, only those past crimes that are similar in nature and are not too distant in time will be deemed probative, with the determination as to similarity and remoteness resting within the sound discretion of the trial judge. Commonwealth v. Mouzon, 53 A.3d 738, 741 (Pa. 2012) citing Commonwealth v. Beck, 402 A.2d 1371, 1373 (Pa. 1979) (plurality) (citing and applying Commonwealth v. Amos, 284 A.2d 748, 750–51).

In Commonwealth v. Quarles, 456 A.2d 188, 192–93 (1983) the defendant was found guilty of aggravated assault and related offenses. The Superior Court found the claim that the trial court erred by failing to admit evidence of the victim's twenty-two year old conviction "wholly frivolous and without merit." The Court explained that the evidence was too "attenuated" and irrelevant where there was no proof and the defendant did not allege knowledge of the victim's prior conviction. See Commonwealth v. Quarles, supra. (the decision to admit that character evidence rests in the sound discretion of the trial judge).

11

Similarly, in this case convictions that occurred some thirty-six years before the Victim was killed were too remote in time to be relevant and they were properly ruled inadmissible[5].

The fact that that self-defense was not at issue in this case must be noted. In Commonwealth v. Mouson, 53 A.3d 738, 740 (Pa. 2012) the Supreme Court considered whether the trial court abused its discretion in excluding evidence of the murder victim's nine-year-old conviction for robbery. The Court explained that, if probative, a victim's prior convictions involving aggression may be admitted "as character/ propensity evidence, as indirect evidence that the victim was in fact the aggressor." First however, self-defense must be properly at issue. "Self-defense or justification requires evidence establishing three elements: '(a) [that the defendant] reasonably believed that he was in imminent danger of death or serious bodily injury and that it was necessary to use deadly force against the victim to prevent such harm; (b) that the defendant was free from fault in provoking the difficulty which culminated in the slaying; and (c) that the [defendant] did not violate any duty to retreat.' " Id. To raise the issue a defendant must to show "some evidence, from whatever source," to support this defense. If the defense is properly raised, a defendant may seek the admission of a victim's prior conviction. If the prior convictions are similar in nature and not too distant in time they will be deemed probative, with the determination as to similar nature and remoteness resting within the sound discretion of the trial judge." Id. at 741 citing Amos, 284 A.2d at 752. In *Mouzon*, as in this case, evidence that purported to support a case for self-defense was lacking.

---

[5] The admission of Mr. Alsop's prior convictions would serve only to smear the decedent's reputation.

12

Defendant testified at trial. He testified that about two weeks before the night of the murder he was approached by Mr. Alsop. N.T. 11/18/15 pp. 107. Defendant knew Mr. Alsop only as a junkie from the neighborhood and never saw him with a weapon. Id. at 123. According to Defendant's testimony Mr. Alsop asked the Defendant if he had any drugs and threated to kill the Defendant when he replied that he did not. A second interaction of the same type occurred during the afternoon of May 8th. Mr. Alsop did not threaten the Defendant but cursed at him. Id. at 109, 116. Defendant testified that later that evening he went to Mr. Alsop's residence to speak with him, to make sure they were "cool." Id. at 110. Although Defendant never saw Mr. Alsop with a weapon, he brought a shotgun with him for his own protection. He was invited in and followed Mr. Alsop into the hall where they spoke for about thirty seconds. Mr. Alsop started to threaten Defendant. Defendant, got "antsy" and took the shot gun from its case. Id. at 117, 121-123. Mr. Alsop reached into his pocket for his cell phone and Defendant believed the black object in Mr. Alsop's hand was a gun. Defendant shot Mr. Alsop, took the cell phone he was holding and ran from the residence. Id. at 112, 120.[6]

### Motion in Limine- Defendant's Juvenile Adjudication for Theft From a Motor Vehicle

In a pre-trial motion *in limine* Defendant requested a ruling excluding evidence of a 2012 juvenile adjudication for theft of a motor vehicle. Because Defendant chose to testify at

---

[6] The jury instructions included an "unreasonable belief" instruction which instructed the jury that if it found that the Defendant in fact harbored a mistaken unreasonable belief that circumstances were such that if they existed the killing would be justified the element of "malice" could not be found. Under those circumstances a defendant cannot be found guilty of murder but may be found guilty of manslaughter provided the defendant did not provoke the use of force by the victim and did not violate a duty to retreat. See N.T. 11/19/15 p. 33. See also Pennsylvania Suggested Standard Criminal Jury Instructions, § 15.2503(A).

trial his credibility was at issue. The evidence, entered by stipulation was offered on rebuttal. The finding that this evidence was admissible was not erroneous.

Pennsylvania Rule of Evidence 609, <u>Impeachment by evidence of conviction of crime</u>, provides, in relevant part, as follows:

> *(a) General rule.* For the purpose of attacking the credibility of any witness, evidence that the witness has been convicted of a crime, whether by verdict or by plea of guilty or nolo contendere, shall be admitted if it involved dishonesty or false statement.
>
> *(b) Time limit.* Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction substantially outweighs its prejudicial effect. However, evidence of a conviction more than ten years old as calculated herein is not admissible unless the proponent gives to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence.
>
> * * *
>
> *(d) Juvenile Adjudications.* In a criminal case only, evidence of the adjudication of delinquency for an offense *366 under the Juvenile Act, 42 Pa.C.S. §§ 6301 et seq., may be used to impeach the credibility of a witness if conviction of the offense would be admissible to attack the credibility of an adult.

There is no basis on which to conclude that the Court erred by allowing evidence of Defendant's 2012 adjudication for a theft offense into evidence for the purpose of impeaching his credibility. The evidence satisfied the dictates of Pa.R.E. 609, credibility was clearly an issue and a juvenile adjudication for theft does not suggest a

14

propensity for murder. See generally Commonwealth v. Rivera, 983 A.2d 1211, 1226–27 (Pa. 2009). It bears only on the Defendant's credibility as a witness at trial. The Court instructed:

> There was evidence tending to prove that the Defendant has a prior criminal conviction. Speaking of his adjudication for Theft of a Motor Vehicle as was stipulated by the parties and testified to by the Defendant. This evidence is not evidence of the Defendant's guilt. You must not infer guilt from the evidence of his prior conviction. The evidence may be considered for one purpose and that is to help you judge the reliability and weight of the testimony given by him as a witness in this trial. You must not regard this evidence as showing that the Defendant is a person of bad character or criminal tendencies from which you might be inclined to infer guilt. In considering the evidence of the you may consider the type of crime committed, how long ago it was committed, the age of the Defendant at the time of the offense and how it may affect the likelihood that he has testified truthfully in this case.

See N.T. 11/19/15 p. 11.

"The law presumes that the jury will follow the instructions of the court." Commonwealth v. Spotz, 896 A.2d 1191, 1224 (Pa. 2006) (citation omitted). See also Commonwealth v. Chmiel, 30 A.3d 1111, 1184 (Pa. 2011); Commonwealth v. O'Hannon, 732 A.2d 1193, 1196 (Pa. 1999) ("Absent evidence to the contrary, the jury is presumed to have followed the trial court's instructions.").

<u>Admission of Photographs #2 and #3</u>

In response to the Commonwealth's motion *in limine* to allow autopsy phots and photographic evidence from the crime scene the Court ruled, after a hearing, that one of the five photographs that the Commonwealth sought to introduce would be excluded. As to the

15

remaining four, Defendant had no objection to photographs marked Exhibits CL-1 and CL-4. See N.T. 10/22/20 p. 47. Defendant argued that Exhibits CL-2 and CL-3 were objectionable because they were excessively gruesome and unnecessary. Id. at 47. Exhibit CL-2 was taken at the crime scene; Exhibit CL-3 is an autopsy photo in which Mr. Alsop's face is hidden from view. The Commonwealth argued that without viewing these photographs the jury would be unable to appreciate the devastation that was caused by a single "slug" shot from a shotgun. Also, in his May 14, 2015 statement Defendant told detectives that he followed Mr. Alsop into the residence and, "I had the shotgun held to him and I told him to empty his pockets, ... I had went through his pockets he ain't have shit but the phone, a little phone. So after that, I was about to leave, next thing I, hear, Boom! The gun went off man, I ain't mean to man, the gun just went off man. I, I ain't mena to." See Exhibit C-29. Evidence from the Medical Examiner's autopsy report indicated that Mr. Alsop was in a defensive posture when he was shot and significant damage to vital organs was inflicted as it traveled into and through Mr. Alsop's body. Therefore, the position of the body and the trajectory of the shot were relevant to demonstrate that the killing was intentional. To this, end the photographs were demonstrative evidence of the extent and the location of the wounds that caused death.

In Commonwealth v. Solano, 906 A.2d 1180, 1191–92 (Pa. 2006) the Supreme Court set forth the law applicable where a defendant claims on appeal that photographs admitted at trial were unduly prejudicial:

> The admission of photographs is a matter vested within the sound discretion of the trial court whose ruling thereon will not be overturned absent an abuse of that discretion. Commonwealth v. Malloy, 579 Pa. 425, 856 A.2d 767 (2004). This Court has long recognized that photographic images of the injuries

16

inflicted in a homicide case, although naturally unpleasant, are nevertheless oftentimes particularly pertinent to the inquiry into the intent element of the crime of murder. See, e.g., Commonwealth v. McCutchen, 499 Pa. 597, 454 A.2d 547 (1982); Commonwealth v. Marinelli, 547 Pa. 294, 690 A.2d 203, 216 (1997)(the mere fact that blood is visible in a photograph does not necessarily render the photograph inflammatory). In determining whether the photographs are admissible, we employ a two-step analysis. First, we consider whether the photograph is inflammatory. If it is, we then consider whether the evidentiary value of the photograph outweighs the likelihood that the photograph will inflame the minds and passions of the jury. Commonwealth v. Marshall, 537 Pa. 336, 643 A.2d 1070, 1074 (1994). Even gruesome or potentially inflammatory photographs are admissible when the photographs are of such essential evidentiary value that their need clearly outweighs the likelihood of inflaming the minds and passions of the jurors. Commonwealth v. Gorby, 527 Pa. 98, 588 A.2d 902, 908 (1991).

Id. In *Solano*, photographs depicting the shirt and shorts worn by the victim the day of the shooting and photographs depicting pools of blood on the basketball court where the victim's body had lain were admitted into evidence. The court determined at the outset that these photos were not inflammatory but went on to examine the question of whether their evidentiary value outweighed any potential prejudice. The photographs were admissible because they were relevant to demonstrate the number and location of the bullet holes, and also to bolster the Commonwealth's forensic evidence indicating that although the victim was shot at close range.

Ein this case, these two photographs exhibit the bloody wounds that which were inflicted and they are certainly unpleasant to view. However, they also exhibit the

17

position of Mr. Alsop's body after he was shot, his wounds at the point of the slug's entry and the trajectory the slug travelled as it went from the arm and into the torso. The photos served as demonstrative evidence to corroborate the Medical Examiner's testimony concerning Mr. Alsop's defensive position and the trajectory of the slug and to contradict the Defendant's prior statement in which he indicated that the shooting was accidental. Therefore, the evidentiary value of these photos clearly outweighed any potential prejudice in this instance.

In Commonwealth v. McCutchen, 454 A.2d 547 (Pa. 1982), where the defendant was found guilty of murder, the Court recognized that evidence in a homicide trial is unpleasant by its very nature: "and the photographic images of the injuries inflicted are merely consonant with the brutality of the subject of inquiry." "To permit the disturbing nature of the images of the victim to rule the question of admissibility would result in exclusion of all photographs of the homicide victim, and would defeat one of the essential functions of a criminal trial, inquiry into the intent of the actor. There is no need to so overextend an attempt to sanitize the evidence of the condition of the body as to deprive the Commonwealth of opportunities of proof in support of the onerous burden of proof beyond a reasonable doubt." 454 A.2d at 549. In McCutchen, supra, the deceased was subjected to a brutal beating and the Court found the photographic evidence disturbing but nonetheless probative of the defendant's intent to kill. So too, in this case, the inference that arises from these photos, i.e. that the Defendant shot Mr. Alsop when he was in a defensive posture with a weapon that was capable of and did in fact inflict unfathomable injuries, was probative of Defendant's intent to kill. The

18

evidentiary value of the images contained in these photographs clearly outweighed the likelihood of inflaming the minds and passions of the jury.

In light of the foregoing, it is respectfully submitted that judgement of sentence should be affirmed.

BY THE COURT:

_____

James P. Bradley,                    J.

19

**IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PENNSYLVANIA**
**CRIMINAL DIVISION**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | CP-23-CR-4565-2015 |
| | : | |
| vs. | : | 816 EDA 2020 |
| | : | |
| RASHON SARGENT | : | |
| | : | |
| | : | |

**Catherine B. Kiefer, Esquire, on behalf of the Commonwealth/Appellee**
**Scott D. Galloway, Esquire, on behalf of the Appellant**

## SUPPLEMENTAL O P I N I O N

**Bradley, J.**                                    **FILED:** 5/21/21

The defendant Rashon Sargent ("the defendant") filed an appeal *nunc pro tunc*

from this court's order from August 9, 2019, dismissing his first Petition for relief under

the Post–Conviction Relief Act ("PCRA"). On November 6, 2019, the defendant filed a

second PCRA petition, claiming that his PCRA counsel had abandoned him and never told

the defendant that his first petition had been dismissed. Following an evidentiary hearing,

this court entered an Order on February 7, 2020, that granted the defendant's petition

and ordered that his appeal rights be reinstated. In his Concise Statement of Matters

Complained of on Appeal, the defendant raised five claims that are meant to be brought

on a direct appeal. In response, this court entered an Opinion addressing the substance

of the direct appeal claims. On April 12, 2021, the Pennsylvania Superior Court remanded

the case to this court to clarify and correct the record and any discrepancy between the

1

Order entered on February 7, 2020, and the way the defendant and the court treated the defendant's five direct appeal claims. This is the trial court's Supplemental Opinion that is being filed to clarify and correct the record.

On November 19, 2015, following trial a jury found the defendant guilty of Murder in the First Degree and Possessing the Instruments of a Crime. This court sentenced the defendant to serve four hundred and thirty-eight (438) months to life imprisonment on January 5, 2016. No post-sentence motions or direct appeal were ever filed. On February 4, 2019, the defendant filed his first PCRA petition, alleging that his appellate counsel abandoned him and failed to file a post-sentence motion or direct appeal on his behalf. The defendant sought to pursue his direct appeal rights in a *nunc pro tunc* appeal. This court dismissed the petition on August 9, 2019, for untimeliness. The defendant filed his second PCRA petition on November 6, 2019, seeking to reinstate his appeal rights from the first petition. According to the defendant, his first PCRA counsel failed to inform him that the petition was dismissed and then the time for filing an appeal expired. The Commonwealth filed an Answer averring that it believed a genuine issue of fact existed over whether the defendant's PCRA counsel's abandonment constituted a newly discovered fact that would constitute an exception to the PCRA's time-bar.

This court held an evidentiary hearing on February 5, 2020. The transcript of that proceeding is included as "Attachment A." At this hearing, the parties stipulated that the defendant was entitled to have his direct appeal rights reinstated. (N.T., 2/05/2020, at 4). Despite the untimeliness of the defendant's second PCRA petition, this court agreed with the stipulation and found that the defendant' trial counsel and first PCRA counsel

2

were both ineffective. The trial counsel failed to file post–sentence motions and failed to file a direct appeal on the defendant's behalf when the defendant asked him to do so. The defendant's first PCRA counsel was ineffective for failing to inform the defendant that his first PCRA petition was dismissed thus failing to give the defendant the choice to file an appeal within the proper time frame.

Generally, a petition for PCRA relief must be filed within a year after the judgment of sentence becomes final to enable the court to have jurisdiction and reach the merits of a claim. (42 Pa.C.S. § 9545(b)(1)). "'[A] judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking review.'" (*Commonwealth v. Montgomery*, 181 A.3d 356, 365, 2018 PA Super 54 (Pa.Super. 2018); *quoting* 42 Pa.C.S. § 9545(b)(3)). If a PCRA petition is filed after that period, it is generally considered untimely and trial court's lack jurisdiction to entertain the claims. However, there are three specific exceptions to the PCRA's jurisdictional time–bar. One of the exceptions, relevant to this petition, is the "newly discovered fact" exception. (42 Pa.C.S. § 9545(b)(1)(i)–(iii)). In this case, both the defendant and the Commonwealth agreed that the defendant's PCRA counsel failing to inform him that his first PCRA petition was dismissed constituted a newly discovered fact to constitute an exception to the time–bar. Based on this, and the agreement between the parties that the defendant's direct appeal rights should be reinstated, this court's order intended to reinstate the defendant's direct appeal rights *nunc pro tunc*. This is why the Opinion that this court filed on May 21, 2020, addressed the merits of the defendant's five claims on appeal. To further clarify the

3

record, this court had the parties execute a written stipulation confirming their agreement to restore the defendant's direct appeal rights. This stipulation is included here as "Attachment B."

It is the opinion of this court that the defendant's direct appeal rights have been reinstated in this action and the merits of the five claims should be addressed. Please see the court's prior responsive opinion for a discussion of the merits of the defendant's five claims on direct appeal.

BY THE COURT:

James P. Bradley,                    J.

4

# Attachment A

IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY
PENNSYLVANIA

CRIMINAL DIVISION

* * * * * * * * * * * * * * *   No. 4565-15
                                  *
COMMONWEALTH OF PENNSYLVANIA      *
                                  *
            VS.                   *
                                  *
RASHON SARGENT                    *
                                  *
* * * * * * * * * * * * * * *



Media, PA, February 5, 2020, 10:43 a.m.

***

Courtroom Number 5

***

TRANSCRIPT OF PROCEEDINGS

BEFORE:   THE HONORABLE JUDGE JAMES P. BRADLEY

          CATHERINE KIEFER, ESQUIRE
          For the Commonwealth

          SCOTT GALLOWAY, ESQUIRE
          For the Defendant

Diaz Transcription Services
2704 Commerce Drive, Ste. D, Harrisburg, PA 17110 ~ (717) 233-6664

INDEX


                    DIRECT  CROSS  REDIRECT  RECROSS


ON BEHALF OF THE COMMONWEALTH:


[None]


ON BEHALF OF THE DEFENDANT:


[None]

EXHIBITS


                              MARKED      ADMITTED

ON BEHALF OF THE COMMONWEALTH:


[None]


ON BEHALF OF THE DEFENDANT:


[None]

P R O C E E D I N G S

February 5, 2020

THE COURT: Counsel?

MS. KIEFER: Good morning.

MR. GALLOWAY: Good morning, Your Honor.

THE COURT: Call the case.

MR. GALLOWAY: Just call the case. He just wants you to call the case.

MS. KIEFER: Oh, I'm sorry. Yep, this is Shon Sargent. It's here for a stipulation on the PCRA.

THE COURT: Okay.

MS. KIEFER: There's new procedures in the courtroom.

MR. GALLOWAY: That's okay. Just put your name on the record.

MS. KIEFER: Yeah, and I'm Catherine Kiefer for the DA's office.

THE COURT: And your attorney ID number is?

MS. KIEFER: 92737.

THE COURT: Okay.

MR. GALLOWAY: Good morning, Your Honor. Scott Galloway, 33614, representing Mr. Sargent, who is standing to my left. As the Court knows -- you can have a seat here, Shon. As the Court knows, we're here in reference to a petition for postconviction relief that I

filed on behalf of Mr. Sargent with today's date as the assigned hearing. I believe there is an agreement, and I'll place the same on the record, and then if Ms. Kiefer disagrees with what I'm saying, obviously, she can chime in. And so the agreement is, Your Honor, that the petition for postconviction relief will be granted as it pertains specifically to the Court's dismissal of the first postconviction petition that was filed in this matter, and the basis for that agreement is that Mr. Sargent was not notified in a timely manner, i.e., within 30 days of the date of that dismissal. He only found out about it considerably later than that, so I believe there's an agreement, and I will submit an order to the Court after I share it with Ms. Kiefer that the petition for postconviction relief as to that specific issue will be granted and that my client will be permitted to file an appeal to the Superior Court nunc pro tunc within 30 days of the date that the Court signs the proposed order.

THE COURT: Okay. Is that the agreement?

MS. KIEFER: That is the agreement, Your Honor.

THE COURT: Okay. And you're going to be submitting an order or you have an order?

MR. GALLOWAY: No, I'm sorry, I don't have an

order as we speak, but I will submit an order at my earliest convenience. I will send a copy to Ms. Kiefer before I bring it -- hand deliver it to chambers, Your Honor.

THE COURT: Okay. Good enough.

MR. GALLOWAY: Thank you.

MS. KIEFER: Thank you, Your Honor.

MR. GALLOWAY: I appreciate it.

THE COURT: You're welcome.

***

[End of Proceeding, 10:46 a.m.]

6

C E R T I F I C A T E

I, Richard Coogan, hereby certify that the proceedings and evidence are contained fully and accurately on multi-track recording; that the recording was reduced to typewriting by my direction; and that this is a correct transcript of the same.

_____
Richard Coogan, Administrator
Court Reporters

DIAZ TRANSCRIPTION SERVICES hereby certifies that the attached pages represent an accurate transcript of the electronic sound recording of the proceedings in the Court of Common Pleas of Delaware County, Pennsylvania, in the matter of:


COMMONWEALTH OF PENNSYLVANIA

vs.

RASHON SARGENT

#4565-15


BY:

_____
Christy Snyder
Transcriber for
Diaz Transcription Services

The foregoing record of the proceedings upon the hearing of the above cause is hereby approved and directed to be filed.


_____
                              Judge

# Attachment B

SCOTT D. GALLOWAY, ESQUIRE
Attorney I.D. No. 33614
1215 West Baltimore Pike, Suite 14
Media, PA 19063
(610) 891-0503                                    ATTORNEY FOR: Defendant

---

## IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PENNSYLVANIA
## CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA          : NO.: CP-23-CR-4565-2015
                                      :
vs.                                   :
                                      :
RASHON SARGENT                        :

## STIPULATION

It is hereby stipulated to by and between Catherine Kiefer, Esquire, Deputy District Attorney

on behalf of the Commonwealth of Pennsylvania, and Scott D. Galloway, Esquire, Attorney for Rashon

Sargent, the following. The parties placed an agreement on the record before the Honorable James P.

Bradley on February 5, 2020 that the Petition for Post Conviction Relief filed by Mr. Sargent be granted.

In addition, Mr. Sargent's Direct Appeal rights to the Superior Court of Pennsylvania were reinstated and

further, that he was to file an Appeal Nunc Pro Tunc within thirty (30) days of the date of the Order signed

by the Court pursuant to said agreement.


CATHERINE KIEFER, ESQUIRE            SCOTT D. GALLOWAY, ESQUIRE
Deputy District Attorney             Attorney for Rashon Sargent